605 A.2d 942

Catherine F. SCOTT

v.

**SEEK LANE VENTURE, INC., et al.**

Catherine F. SCOTT

v.

**Harry P. FERNANDEZ, et al.**

**Nos. 1017 and 1096, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

May 5, 1992.

Gary D. Rosch, Bethesda, for appellant.

Jeffrey Van Grack (Tamara A. Stoner and Raymond B. Via, Jr. on the brief), Rockville, for appellee, Seek Lane.

Patrick C. McKeever (James J. Demma and Miles & Stockbridge on the brief), Rockville, for appellee, Fernandez.

Argued before BLOOM, FISCHER and HARRELL, JJ.

HARRELL, Judge.

These cases, which have been consolidated for purposes of this appeal, arise from the entry of an order partially setting aside the foreclosure of an equity of redemption and of *ex parte* injunctions by the Circuit Court for Montgomery County (Messitte, J.). In case number 1017, appellant raises the following issues for our consideration:

I. Whether we have jurisdiction to address the issue of the interlocutory injunction entered in case number 1017 when appellant failed to file a notice of appeal;

II. Whether the circuit court has jurisdiction to enter *ex parte* injunctions against appellant after a final judgment

foreclosing the right of redemption has been entered; and,

III. Whether the circuit court erred in reopening an enrolled final judgment, which foreclosed the right of redemption, when appellant failed to provide a defunct corporation with sufficient notice of the foreclosure action.

Appellee seeks to raise one issue for our review:

IV. Whether individual members of a homeowners association were entitled to notice of the tax sale.

In appeal number 1096 the following issues are presented for our consideration:

I. Whether the interlocutory injunction entered by the circuit court may be appealed when appellant has not filed an answer in the cause wherein the injunction was issued;

II. Whether the circuit court erred in denying appellant's motion to dismiss the appellees' declaratory judgment suit;

III. Whether the circuit court has jurisdiction to enter *ex parte* and interlocutory injunctions against appellant after a final judgment foreclosing the right of redemption has been entered; and,

IV. Whether the circuit court abused its discretion in enjoining appellant until the issues raised in the declaratory judgment suit are fully adjudicated.

### Facts

On 5 October 1985[1], Seek Lane Venture, Inc., (hereinafter Seek Lane Venture), a developer of real property, had

---

1. There appears to be some question as to the exact date that Seek Lane Venture, Inc. had its corporate charter forfeited. A letter from the Maryland Department of Assessments & Taxation to appellant's counsel indicates that the charter was forfeited on 5 October 1987. On the other hand, the parties agreed at a hearing that the corporation was defunct prior to the tax sale. Furthermore, the 5 October 1985 date was used in various motions filed in the circuit court and in appellees' Briefs filed in this Court.

its corporate charter forfeited by the State of Maryland for failure to file corporate personal property tax returns. As a result of Seek Lane Venture's additional failure to pay county real property taxes, a tax sale was held. On 9 June 1986 appellant, Catherine F. Scott (hereinafter Scott), purchased at tax sale various parcels of real property, including one described as follows:

> Parcel B, Block F, "Long Branch View" per plat thereof recorded in Plat Book 127 at Plat 14873 among the Land Records of Montgomery County, Maryland, containing 2.86 acres, more or less, and designated as Tax Account No. 13–501–2415878.

Long Branch View is a subdivision originally subdivided and developed by Seek Lane Venture. Parcel B contains the common areas of the Long Branch View subdivision adjacent to Lots 3 through 34 of that subdivision. Within Parcel B is located, in addition to underground public utility easements, a storm water management easement, and open space associated with the single-family, residential building lots, a private street (denominated Seek Court) and vehicle parking to serve the homes that were constructed on the adjacent lots. Seek Court was the sole vehicular access for the residential lot owners to gain access to the public street nearest the subdivision. The subdivision plat was recorded among the land records of Montgomery County in 1984.

In 1983 and 1984, during the time of Seek Lane Venture's valid corporate existence, it recorded in Montgomery County a Declaration of Covenants, Conditions and Restrictions, and a modification pertaining to the subdivision.[2] These documents indicated that Seek Lane Venture intended to convey ownership of the common areas of the subdivision to a homeowners association (arguably appellee Seek Court

---

2. Although Exhibit A of the Declaration, which was intended to be a legal description of the subject property of the Declaration, was not appended to the Declaration as recorded in 1983, the modification corrected that omission.

Homeowners Association, Inc., although the Declaration does not explicitly name that association as such).

The Declaration also contained references to easements. Seek Lane Venture apparently conveyed to the various lot owners of the subdivision easements "of enjoyment in and to the Common Area, including an easement for the use and enjoyment of the private streets and parking lots and walkways within the Common Area." These easements were apparently intended to be appurtenant to, and pass with the title of, every lot in the subdivision, subject to certain rights of an unidentified association (again, arguably Seek Court Homeowners Association, Inc., although this was not explicitly stated).

Another section of the Declaration specifically addressed the parking rights of the various lot owners. It provided:

*Section 3. Parking Rights.* Ownership of each Lot shall entitle the Owner or Owners thereof to the use of not more than two (2) automobile parking spaces, which shall be as near and convenient to said Lot as reasonably possible, together with the right of ingress and egress in and upon said parking area.

These provisions of the Declaration notwithstanding, Seek Lane Venture never conveyed Parcel B to appellee, Seek Court Homeowners Association, Inc.

During the time when Parcel B was being sold at tax sale, and a Certificate of Sale was issued to Scott, Seek Court Homeowners Association, Inc., which consisted of the various lot owners in the subdivision, erroneously believed that it was the owner of Parcel B. It paid liability insurance on the property and performed all required maintenance. In 1988, it even granted an easement to the local cable network, which provided that the cable system would be installed:

across the common areas of Seek Court Townhouses, lots 3–39, Parcel B, Block F, being the property designated as being owned by the Homeowners Association as shown on Plat of Subdivision entitled "Long Branch View",

Montgomery County, Maryland, and recorded among the Plat records of Montgomery County, in Plat Book 127, Plat No. 14873.

Eventually, Scott filed a Complaint to Foreclose the Right of Redemption on the property she purchased at the tax sale. Seek Lane Venture was the record owner, since it had never conveyed Parcel B as apparently intended by the Declaration. Scott attempted to serve by mail notice of its suit to foreclose the equity of redemption on Seek Lane Venture, even though she was aware that it was a defunct corporation. Scott addressed the notice to a post office box in Silver Spring, Maryland, which she maintained was the last known address of Seek Lane Venture as disclosed by "a search of the public Land Records." The notice was returned as "undeliverable." Scott's attorney filed an affidavit of service in the circuit court to that effect. No notice was sent to any individual lot owner in the subdivision, the Seek Court Homeowners Association, Inc. or any of the previous directors, officers, or stockholders of Seek Lane Venture. Although in March of 1988 Scott had contacted the Maryland Department of Assessments & Taxation, seeking a "corporate abstract" of Seek Lane Venture [3], she did not inquire as to whether any departmental records might disclose who the resident agent had been, what the principal office address of the corporation had been, or the names and addresses of the officers or directors as last revealed by any corporate tangible personal property tax returns or the articles of incorporation. Scott did give notice by publication to Seek Lane Venture, First Maryland Savings and Loan, Inc.'s mortgage trustees, the State of Maryland Insurance Fund Corporation, and generally "all persons that have or claim to have any interest" in the subject property. To no one's surprise, we are sure, no responses were received to the notice by publication.

---

3. The Department's form response advised Scott's then attorney that no abstract was available, as the corporate charter had been forfeited on 5 October 1987.

On 7 December 1989, the circuit court entered an order foreclosing Seek Lane Venture's right of redemption in favor of Scott. This order provided that Scott's title was "free and clear of all alienations and descents of the property occurring before this judgment as provided in said Code, and all encumbrances on the property, except ... easements to which the property is subject, and of which the Plaintiff herein [appellant, Scott] had actual [or] constructive notice at the time of sale." Subsequently, a deed conveying Parcel B to Scott was executed by the tax collector.

After Scott recorded the deed to Parcel B, she sent a letter, through her counsel, to each of the thirty-two homeowners in the Long Branch View subdivision, which provided, in part:

As Purchaser at the tax sale, which was subsequently approved by the Circuit Court for Montgomery County, Ms. Scott now owns the street and parking area, as well as the open space surrounding the townhouse units. As owner of this area, she has the right to restrict use of this property in any manner. This would include, but not necessarily be limited to, the rental of parking spaces to various owners and the possible restriction of use of the private street.

On 5 December 1990, Seek Court Homeowners Association, Inc., (hereinafter "the Association") petitioned the Circuit Court for Montgomery County to set aside the enrolled final judgment that had foreclosed the right of redemption. The Association argued that Scott knew, or should have known, that the Association had an interest in the property at issue and failed to give notice of the sale either to it or to the individual homeowners. The individual homeowners were not permitted by the circuit court to be parties to this action.

On 11 March 1991, the circuit court determined that Scott did not provide proper service upon Seek Lane Venture, a defunct corporation, pursuant to the Maryland rules of procedure. The court set aside and declared invalid the

final order of foreclosure of the equity of redemption as it pertained to Seek Lane Venture and/or any of its assignees, successors-in-interest, or any other persons claiming by or under or through Seek Lane Venture. The circuit court indicated that, at a future trial, the Association would have to prove its claim that it was a successor-in-interest or assignee of Seek Lane Venture. In all other respects, the circuit court's 7 December 1989 final order of foreclosure continued in full force and effect.

On 1 July 1991, Scott's counsel sent a letter to counsel for the Association which provided, in relevant part:

My client has owned Parcel B in fee simple since February 15, 1990. Despite numerous efforts ... no payment for the use of this property has been made even though Ms. Scott's ownership has been known since early last year.

Therefore, Ms. Scott has instructed me to give you the terms for continued use of the property. This letter should be considered the *bill* for the use of the property since February 15, 1990. Ms. Scott has fixed the rental for the use of the parking at $30 per space; calculated at the rate of 80 spaces, she is entitled to $2,400 per month. Actually, there are more than 80 spaces, but Ms. Scott has generously agreed not to charge for more or for the use of other areas of the property at this time provided Seek Court Homeowners Association, Inc. pays the arrearages and makes current payments.

.... The total amount due is $66,000. *This amount is due immediately.* Until it is paid, no individual without authorization from Ms. Scott may park or use the property of Parcel B in any way including but not limited to picnicking, storage, or recreational activities.

Arrangements are being made with a towing company to enforce this right, and any car without authorization on this property will be towed without further notice or warning. Individuals who wish to purchase parking stickers should contact Ms. Scott directly if the Association does not act expeditiously.

Ms. Scott has agreed to stay any action until July 10, 1991, at 5 p.m. I am sure you will agree that anyone who owns property in the State of Maryland is entitled to be paid for its use. If your clients do not wish to pay, they had better not use it. Anyone who does will be towed and/or prosecuted civilly and criminally as trespassers.

The Association subsequently filed a motion for an *ex parte* injunction to bar Scott from carrying out any of the threats made in her letter of 1 July 1991, and from denying ingress or egress into the subdivision. On 8 July 1991, the circuit court granted Seek Court Homeowners Association, Inc.'s motion. The injunctive order was made interlocutory, *pendente lite*, by order of 26 July 1991. Appeal number 1017 followed.

Also on 8 July 1991, various lot owners in the subdivision [4], all individual members of the Association, filed a "Complaint for Declaratory Relief to Confirm Easements and Other Rights and for Injunction" against Scott. *Ex parte* orders were entered against Scott, barring her from carrying out any of the threats contained in her 1 July letter to the Association. Scott filed an opposition to and a motion to dismiss the declaratory action, which motion was denied. After a hearing, the injunctive relief was made interlocutory, *pendente lite*, by a order on 26 July 1991. Appeal number 1096 followed.

### Discussion

This case, like others recently decided by this Court and the Court of Appeals [5], requires an examination of the steps that must be taken by a tax sale purchaser to notify a

---

**4.** These individuals, appellees in appeal number 1096, are Harry P. Fernandez, Vivian Villoch, Rodger Dale Murphey, Richard Sigman, and Jane Kheel Stanley.

**5.** *See, John P. Kennedy, et al. v. Annette Maria Cummings, et al.,* 91 Md.App. 21, 603 A.2d 1251 (1992); *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 603 A.2d 484 (1992).

property owner of an impending foreclosure of the right to redeem.

In tax sale cases, property owners may be deprived of their property rights. Since state action is involved, constitutional guarantees of due process are implicated. The property owners' interests, however, must be balanced against the State's interest in encouraging the participation of purchasers in tax sales and in the granting of marketable titles.

The procedure that governs tax sales in Maryland is set forth in Md.Tax–Prop.Code Ann. §§ 14–808 through 14–864. In 1986, the General Assembly made significant changes in the laws governing this procedure. 1986 Md.Laws ch. 825. These changes were intended to "provide greater protection for due process by facilitating notice of tax sales of property in the State." Summary of Committee Report, Senate Judicial Proceedings Committee, p. 3.

The procedure set forth in the Tax–Property Article provides, in simplified form, that, when taxes on real property are not paid, the tax collector shall sell the property at public auction. Before doing so, the tax collector must mail a final bill and a notice of the proposed sale to the property owner at the address shown on the tax rolls. The tax collector must also advertise the tax sale in a newspaper having general circulation in the county in which the property is located. Even after the property is sold, the property owner has the right to redeem the property by paying all accrued taxes plus interest, costs, and fees. That right to redeem, however, may be foreclosed by an order of the circuit court in the county in which the land is located.

At any time between six months and two years from the date of the tax sale, the holder of the certificate of sale may file a complaint to foreclose all rights of redemption of the property to which the certificate relates. Md.Tax–Prop. Code Ann. § 14–833(a) and (c)(1). Section 14–836(b) sets forth who must be named as a defendant in a suit to

foreclose the right of redemption. It provides, in part, as follows:

(b) *Defendants.*—(1) Except as otherwise provided in this subsection, the defendants in any action to foreclose the right of redemption shall be:

(i) the record title holder of the property as disclosed by a search performed in accordance with generally accepted standards of title examination of the land records of the county, of the records of the register of wills of the county, and of the records of the circuit court for the county;

Section 14–839, which was rewritten in its entirety in 1986, sets forth the manner by which the plaintiff-tax sale purchaser must give notice to each defendant. That section provides, in pertinent part, that:

(a) *Notice to defendants.*—(1) The plaintiff shall show in the title of the complaint the last address known to the plaintiff or to the attorney filing the complaint of each defendant, as obtained from:

(i) any records examined as part of the title examination;

(ii) the tax rolls of the collector who made the sale, as to the property described in the complaint; and

(iii) any other address that is known to the plaintiff or the attorney filing the complaint.

(2) Paragraph (1) of this subsection does not require the plaintiff or the attorney for the plaintiff to make any investigations or to search any other records or sources of information other than those stated.

The effect of foreclosing the right of redemption is significant because the property owner is thereby divested of all right, title, and interest in the property. This fact notwithstanding, § 14–845(a) of the Tax–Property Article provides that a court may reopen a judgment rendered in a tax sale foreclosure proceeding on the grounds of lack of jurisdic-

tion or fraud in the conduct of the proceedings.[6] We shall now discuss each of the issues raised, *seriatim.*

## *Appeal Number 1017*

*I. Whether we have jurisdiction to address the issue of the interlocutory injunction entered in case number 1017 when the appellant, Scott, failed to file a notice of appeal.*

 ■ On 12 March 1991, the circuit court filed an order granting the Association's motion to set aside the final order of foreclosure granted on 7 December 1989. On 9 April 1991, appellant filed a notice of appeal which stated, in pertinent part, as follows:

> The Plaintiff, Catherine F. Scott, ... hereby note [sic] an appeal from the Order of this Court dated March 11, 1991, filed March 12, 1991 ... at which time all rights of the Plaintiff to Parcel 2 were adjudged; modifying the previous Final Order of Forclosure [sic] entered by this Court, granting the Plaintiff, an absolute and indefeasible title in fee simple, free and clear of all alienations, descents, and encumbrances.

On 8 July 1991, the Association filed a motion for an *ex parte* injunction, seeking to enjoin Scott from carrying out the threats contained in her letter of 1 July 1991. The injunction was granted, later extended, and ultimately made interlocutory, *pendente lite,* on 26 July 1991. At no time did Scott file a notice of appeal from the entry of the *ex parte* or interlocutory injunctions entered in that case. Maryland Rule 8–201 provides that the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8–202. Accordingly, the issue of the injunction entered in case number 1017 is not before us. The sole issue

---

**6.** Section 14–845(a) also provides that an application to reopen a judgment on the ground of constructive fraud must be filed within one year from the date of the judgment. *See also Brooks v. McMillan,* 42 Md.App. 270, 400 A.2d 436 (1979).

properly raised in appeal number 1017 is the propriety of the circuit court's 12 March 1991 decision to reopen an enrolled final judgment.

*II. Whether the circuit court has jurisdiction to enter ex parte and interlocutory injunctions against appellant after a final judgment foreclosing the right of redemption has been entered.*

For the reasons set forth in our discussion of the first issue raised in appeal number 1017, *supra,* we need not address this issue.

*III. Whether the circuit court erred in reopening an enrolled final judgment, which foreclosed the right of redemption, when appellant failed to provide a defunct corporation with sufficient notice of the foreclosure action.*

Scott argues that, with regard to giving notice to the defendants in a foreclosure of the right of redemption action, § 14–839 of the Maryland Code, *supra,* does not require the plaintiff to make any investigations or to search any records or sources of information other than those listed in the statute. She maintains that she properly followed the procedures set forth in the Tax–Property Article by listing "Seek Lane Venture, Inc., a defunct corporation," as the defendant. She contends that her statutory duty to determine the proper identity of the property owners or other interested parties was satisfied, notwithstanding the fact that, at the time her petition to foreclose was filed, she was aware that Seek Lane Venture, the record owner, was a defunct corporation. We qualifiedly disagree.

As the Court of Appeals recognized in *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 603 A.2d 484 (1992), the plaintiff in a foreclosure of the right of redemption action often stands to benefit from failed attempts to notify the defendant(s). The Court in *Aggarwal* also acknowledged that

> when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

*Aggarwal,* 326 Md. 90, 603 A.2d 484 (1992) *quoting Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

In *Aggarwal,* the Court of Appeals ordered that petitioner's motion to vacate the order foreclosing the right of redemption be granted because of respondent's failure to comply with the statutory notice requirements. The respondent had mailed petitioner's notice to the address listed on the records of the County Supervisor of Assessments, which was, in fact, the address of the unimproved property for which the unpaid taxes were due. While the deed to petitioner recorded in the land records did not contain petitioner's address, it did contain the name and address of the title company that had handled the transfer of the property to petitioner less than two years before. The Court concluded that where a plaintiff or the plaintiff's attorney becomes aware that the address given on the tax rolls is a "bad address," *i.e.,* not a correct address for the owner of the property, the plaintiff and the attorney "know" the address of the owner within the meaning of § 14–839(a)(1) "when, except for manifest indifference to information shown in the land records or the tax rolls, they would have actually discovered that address." *Aggarwal,* 603 A.2d at 490.

The Court stressed in its decision underlying due process concerns and the general inadequacy of notice by publication. The Court quoted from *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983), wherein the Supreme Court stated that:

> [n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party ... if its name and address are reasonably ascertainable.

*Aggarwal,* 603 A.2d at 486. (Emphasis in original). Discussing the Supreme Court's decision in *Mennonite,* the Court of Appeals further stated that:

Although the [Supreme] Court noted that the State need not make extraordinary efforts to locate an unnamed party, the assumption that the address of this known party 'could have been ascertained by reasonably diligent efforts' rendered constructive notice insufficient for constitutional purposes.

*Aggarwal,* 603 A.2d at 486 (citing *Mennonite,* 462 U.S. at 798–800, 103 S.Ct. at 2711–2712).

In *Aggarwal,* the Court of Appeals also addressed the meaning of the word "known" as it is used in § 14–839(a)(1)(iii). The Court pointed out that, although a requirement of actual knowledge does not mean "constructive knowledge," "substantial knowledge" or "should have known," it does include the willful refusal to know. *Aggarwal,* 603 A.2d at 489. Quoting Judge Chasanow's concurring opinion in *State v. McCallum,* 321 Md. 451, 458, 583 A.2d 250 (1991), the Court stated:

There is more than one mental state that may constitute 'knowledge.' The first and highest form of 'knowledge' is actual knowledge, that is, an actual awareness or an actual belief that a fact exists. A second form of 'knowledge' is what has often been called 'deliberate ignorance' or 'willful blindness.' R. Perkins, *Criminal Law,* Ch. 7, § 4 at 687 (1957). The latter form of 'knowledge' exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning of the truth.

In the case *sub judice,* we find that the trial court acted properly in setting aside the final order foreclosing the right of redemption as to Seek Lane Venture and/or its assignees, successors-in-interest, or others claiming under it. At the time Scott filed her petition to foreclose the right of redemption, she knew that Seek Lane Venture was a defunct corporation. Under Maryland law, once a corpora-

tion's charter is revoked and forfeited, the corporation ceases to exist as a legal entity. *Atlantic Mill & Lumber Realty Co. v. Keefer,* 179 Md. 496, 499–500, 20 A.2d 178 (1941); *Cloverfield Improvement Assoc., Inc. et al. v. Seabreeze Properties, Inc.,* 32 Md.App. 421, 424–26, 362 A.2d 675 (1976), *modified in part and aff'd* 280 Md. 382, 373 A.2d 935 (1977); H. Brune, Jr., *Maryland Corporation Law and Practice,* §§ 406–08 (Rev.Ed. 1953 & Supp.). We stated in *Cloverfield* that:

> '[t]he forfeiture for non-payment of taxes puts an end to the corporate existence, and the rights of creditors become fixed at that time. The corporate assets are automatically transferred to the directors, as trustees, for use of the creditors and stockholders or members, and are held by such trustees until revival of the charter of the corporation.'

*Cloverfield,* 32 Md.App. at 424–25, 362 A.2d 675 (quoting H. Brune, *Maryland Corporation Law and Practice, supra,* at § 406).

Once a corporation's existence has been terminated, the defunct corporation can neither sue, nor be sued, either *in rem* or *in personam. Atlantic Mill & Lumber Realty Co.,* 179 Md. at 500, 20 A.2d 178. The corporation's assets are automatically transferred to the corporation's directors, who become the trustees of the assets of the defunct corporation for purposes of liquidation. *Cloverfield,* 32 Md.App. at 425, 362 A.2d 675. The powers of the directors-trustees are set forth in Md.Corps. & Ass'ns Code Ann. § 3–515, which provides, in part:

> *(a) Directors become trustees.*—When the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets for purposes of liquidation.

> \*　　\*　　\*　　\*　　\*　　\*

> *(c) Specific powers.*—The directors-trustees may:
> (1) Carry out the contracts of the corporation;

(2) Sell all or any part of the assets of the corporation at public or private sale;

(3) Sue or be sued in their own names as trustees or in the name of the corporation; and

(4) Do all other acts consistent with law and the charter of the corporation necessary or proper to liquidate the corporation and wind up its affairs.

■ It is clear from the Record in the case *sub judice* that, even though Scott knew that Seek Lane Venture was a defunct corporation, she failed to list the directors-trustees as defendants to the foreclosure action. Moreover, although Md.Corps. & Ass'ns Code Ann. § 3–515(c)(3) provides that the directors-trustees may be sued in the name of the defunct corporation, Scott failed to give notice of the foreclosure proceeding to the directors-trustees. Since Scott had actual knowledge of the non-existence of the corporate entity, she was required to undertake a reasonable search for the identity of the directors-trustees, and to give them notice by mail or other means as certain to ensure actual notice.

■ The names and addresses of the directors-trustees were reasonably ascertainable. Scott could have found the names of the last known directors by examining the corporation's articles of incorporation, which were available in the corporate records of the Circuit Court for Montgomery County.[7] We find that, under the facts of this case, Scott's

---

7. Pursuant to section 14–836(b)(1)(i) of the Tax–Property Article, Scott was required to search the county land records, the records of the county register of wills and the records of the circuit court to determine the name of any defendants in her action to foreclose the right of redemption. In this case, a search of the records of the circuit court would have disclosed the defunct corporation's articles of incorporation, since the State Department of Assessments and Taxation is required to transmit all charter documents, and any documents designating or changing the name or address of a resident agent or principal office of a Maryland corporation, to the clerk of the court of the county where the principal office of the corporation is located. *See* Md.Corps & Ass'ns Code Ann. § 1–202. Scott also could have ascertained the names and addresses of the directors from the corpo-

failure to search for this readily available information constituted a willful refusal to know. The end result is that Scott failed to give proper notice to the owners of the property, namely the directors-trustees of Seek Lane Venture. Accordingly, we hold that the trial court did not err in reopening the enrolled final judgment, which had previously foreclosed the owner's right of redemption.

### IV. Whether individual lot owners and Seek Court Homeowners Association, Inc. were entitled to notice of the tax sale.

■ Appellee, Seek Court Homeowners Association, Inc., seeks to have this court consider whether it and the individual lot owners in the subdivision who constitute its membership, but who were not permitted to become parties to this case by the trial court, were entitled to notice of appellant's proposed foreclosure of the equity of redemption as to Parcel B. The short response is that this issue is not properly before us in this appeal.

The appellee did not notice an appeal or cross appeal from any order of the trial court. Moreover, this issue was not plainly decided by the trial court. Md.Rule 8–131; *Kohr v. State*, 40 Md.App. 92, 388 A.2d 1242 (1978); *C.S. Bowen Co. v. Maryland Nat'l Bank*, 36 Md.App. 26, 373 A.2d 30 (1977). To the extent that this issue may be addressed by the trial court when the hearing on the merits is conducted, we invite the trial court's (and the parties') attention to *Ayres v. Townsend*, 324 Md. 666, 598 A.2d 470 (1991) for whatever guidance may be gleaned from it. As the homeowners association's and the lot owners' asserted right to notice would necessarily be premised on the Declaration, its modification, and/or the subdivision plat, all recorded in the land records of the Circuit Court for Montgomery County prior to the tax sale, *Ayres* may be instructive.

---

rate and tax documents retained by the State Department of Assessments and Taxation, which she claims she examined to obtain a current address for Seek Lane Venture, Inc.

*Appeal Number 1096*

I. *Whether the ex parte and interlocutory injunctions entered by the circuit court may be appealed when appellant has not filed an answer in the cause wherein the injunctions were issued.*

 Section 12–303 of Maryland's Courts and Judicial Proceedings Article provides, in part, that:

A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \* \* \* \*

(3) An order:

(i) Granting or dissolving an injunction, but if the appeal is from an order granting an injunction, only if the appellant has first filed his answer in the cause.

In appeal number 1096, the individual lot owners contend that Scott failed to file an answer in the cause below, and, therefore, may not appeal issues relating to the granting of the *ex parte* and interlocutory injunctions. Based upon the particular facts of this case, we disagree.

On 8 July 1991, the individual lot owners filed a Complaint for Declaratory Relief and to Confirm Easements and Other Rights and for Injunction. On the same day, the circuit court issued an *ex parte* injunction prohibiting Scott from carrying out the threats contained in her 1 July 1991 letter. On 15 July 1991, appellees filed a motion which requested the circuit court to enlarge or extend the time of the previously imposed, *ex parte* injunction. On 16 July 1991, the circuit court extended the time for the *ex parte* injunction. On the same day, Scott filed an omnibus motion captioned "Opposition to Motion to Enlarge/Extend Time of Ex Parte Injunction, Motion to Dismiss Harry P. Fernandez, *et al.* as Plaintiffs, Motion to Increase Bond Required Pursuant to Rule BB75, Motion for Court to Issue a Written Opinion in this Matter."

In her motion, Scott requested that the circuit court deny the lot owners' request to extend the time of the *ex parte* injunction. She argued that the lot owners' action was

barred by the Tax–Property Article of the Maryland Code. She maintained that under the Tax–Property Article, neither the Association nor the individual lot owners were holders of legal interests in the subject property such that they were entitled to be named as defendants or personally served with notice of her action to foreclose the right of redemption. She further argued that the circuit court exceeded its authority and was without power to issue an *ex parte* injunction because no finding was made that, absent an injunction, the individual lot owners would suffer irreparable injury.

In cases such as the one before us, we do not believe that the caption or form of the pleading is the controlling consideration. Although Scott's motion was not titled an "answer," it clearly responded to the claims raised in the lot owners' complaint and stated Scott's defenses. Moreover, under Md.Rule 2–322, a motion to dismiss serves the same function as a demurrer under the former rules. *Sharrow v. State Farm Mutual Auto. Ins. Co.*, 306 Md. 754, 511 A.2d 492 (1986). We have previously acknowledged that "[a] demurrer to a bill or petition for an injunction is regarded as an answer". *Maryland Commission on Human Relations v. Baltimore County Savings & Loan Assoc.*, 52 Md.App. 357, 366, 449 A.2d 455 (1982). We will, therefore, treat Scott's motion as an answer. Accordingly, we hold that the issue of whether the circuit court erred in granting the injunctions is properly before us.

*II. Whether the circuit court erred in denying appellant's motion to dismiss the appellees' declaratory judgment suit.*

Scott contends that the circuit court erred in denying her motion to dismiss the declaratory judgment suit brought by the individual lot owners. We disagree.

Scott has failed in her Brief to indicate where in the Record the circuit court denied her motion to dismiss. In fact, our review of the Record indicates that the circuit

court never ruled on Scott's motion. Scott argued below that the Tax–Property Article of the Maryland Code prohibited the individual lot owners from maintaining their declaratory judgment action. The lot owners countered that they were not contesting Scott's title to the property, but were seeking an adjudication on the existence of easements and, therefore, were not barred by the Tax–Property Article.

The circuit court recognized that, in Judge Mitchell's final judgment which foreclosed the right of redemption, Scott was awarded "an absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring before this judgment as provided in said Code, and all encumbrances on the property, except taxes that accrue after the date of the sale, *and easements to which the property is subject, and of which the Plaintiff herein had actual [or] constructive notice at the time of the sale.*" (Emphasis added). Referring to this language, the circuit court asked counsel for the parties "What does that mean?" and the following colloquy occurred:

[SCOTT'S COUNSEL]: That means they have to establish that [Scott had actual or constructive notice of the easements at the time of the tax sale] before they can go forward.

[THE COURT]: Well, I assume that will be a matter of proof.

[SCOTT'S COUNSEL]: Well, then, that should be the first issue of proof, Your Honor, because if, for example, they cannot establish that, then they are out of the case.

[THE COURT]: Okay. That gets us beyond the Motion to Dismiss, however, at this point.

[SCOTT'S COUNSEL]: Well, we have no problem with taking evidence on that particular point before the Court goes forward, but if they cannot establish that she had actual notice, then I think the Court will agree they are out.

[THE COURT]: Before you go any further, let me hear what [appellees' counsel] says responsively to that.

[APPELLEES' COUNSEL]: If Your Honor please, with counsel's very generous acknowledgement that we are beyond the Motion to Dismiss, we have very little [to] say other than that the Statute of Limitations as respects these clients began to run on July 1, 1991, because it was on that date that we received notice of the threat of criminal prosecution for traversing parcel B, and we therefore have ample time within which to prosecute this action seeking to perfect an easement upon that parcel, and with that in mind, Your Honor, we will call our first witness.

[SCOTT'S COUNSEL]: Can I respond to that?

[THE COURT]: Well, wait a minute. Let me just see if there are any other preliminary matters.

The circuit court never made a final ruling on the motion to dismiss. The circuit court merely determined that the *ex parte* injunction should be continued as an interlocutory injunction, *pendente lite,* and it increased the bond. At best, therefore, we can assume only that the circuit court reserved its ruling on this matter until a hearing was held on the merits. In any event, the disposition of Scott's motion to dismiss is not properly before us. We note, in passing, the limited role a motion to dismiss may play in challenging a declaratory judgment action. *Hunt v. Montgomery County,* 248 Md. 403, 237 A.2d 35 (1968) (ordinarily the only place a demurrer [motion to dismiss] has in the declaratory process is to challenge the legal availability of the remedy sought to be used).

*III. Whether the circuit court has jurisdiction to enter ex parte injunctions against appellant after a final judgment foreclosing the right of redemption has been entered.*

Scott argues that because the circuit court entered a final decree foreclosing the right of redemption pursuant to the Tax–Property Article, it lacked the power to enjoin her from exercising dominion, control and enjoyment of her fee sim-

ple absolute title in the subject property. We disagree and explain.

In the instant case, the lot owners are not seeking to set aside the order foreclosing the rights of redemption. Rather, they are seeking to have certain easements declared as a matter of law and to enjoin Scott from denying access to and use of the subject property until the easement issue is determined. The final order foreclosing the rights of redemption clearly stated that Scott took the subject property free and clear of all alienations and descents of the property except easements to which the property was subject, and of which she had actual or constructive notice at the time of the sale. This language complies with, and is virtually identical to, that used in § 14–844 of the Tax–Property Article.

Section 14–845 of the Tax–Property Article provides, in part, that:

> A court in the State may not *reopen a judgment rendered in a tax sale foreclosure proceeding* except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose; however, no reopening of any judgment on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained by any court unless an application to reopen a judgment rendered is filed within 1 year from the date of the judgment.

(Emphasis supplied). Although this statute clearly limits the grounds on which a court may reopen a judgment entered in a tax sale foreclosure proceeding, it does not limit in any way the right of an easement holder to maintain a declaratory judgment action in order to have various easements declared as a matter of law. Accordingly, we find that the circuit court had jurisdiction to enter *ex parte* and interlocutory injunctions against Scott *pendente lite*, notwithstanding the fact that a final judgment foreclosing the right of redemption had been entered.

*IV. Whether the circuit court abused its discretion in enjoining appellant until the issues raised in the declaratory judgment suit are fully adjudicated.*

 The granting or denying of an injunction is a matter within the discretion of the trial court and will not be disturbed on appeal unless that discretion has been abused. *Teferi v. DuPont Plaza Associates,* 77 Md.App. 566, 578, 551 A.2d 477 (1989); *Holiday Universal Club v. Montgomery County,* 67 Md.App. 568, 576, 508 A.2d 991 (1986); *Seci, Inc. v. Chafitz, Inc.,* 63 Md.App. 719, 725, 493 A.2d 1100 (1985). Upon our review of the record, we perceive no abuse of discretion.

 The appropriateness of granting an interlocutory injunction is determined by examining four factors: (1) the likelihood that the plaintiff will succeed on the merits; (2) the "balance of convenience" determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal; (3) whether the plaintiff will suffer irreparable injury unless the injunction is granted (this factor must also be evaluated within the basic context of the balance-of-hardship test); [8] and (4) the public interest. *Teferi,* 77 Md.App. at 578, 551 A.2d 477; *Department of Transportation v. Armacost,* 299 Md. 392, 404–05, 474 A.2d 191 (1984); *State Dep't v. Baltimore County,* 281 Md. 548, 554, 383 A.2d 51 (1977); *Lerner v. Lerner,* 306 Md. 771, 776, 511 A.2d 501 (1986).

 In the case *sub judice,* the trial judge clearly considered each of the four factors. In considering the likelihood that the plaintiffs (individual lot owners) would succeed on the merits, the trial court examined the language used in the Tax–Property Article and in the final order

---

8. The factor of irreparable injury can also include the necessity to maintain the status quo. *See Lerner v. Lerner,* 306 Md. 771, 791, 511 A.2d 501 (1986). "It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id.* at 784, 511 A.2d 501 (citations omitted). *See generally id.* at 783–85, 511 A.2d 501.

terminating the right of redemption. The trial court concluded that it was likely that fee simple title would pass to the tax sale purchaser subject to the easements of record and any other easements that might be observed by an inspection of the subject property. The court stated "that in fact the individual home owners have a high likelihood of success on the merits in this case."

In considering the second and third factors, the trial court recognized that the individual lot owners needed to have access to and from their property and that they needed a place to park for themselves as well as for their visitors. The court concluded that the burden on the individual lot owners would be quite substantial if, pending litigation, they would have to find new parking places or yield to Scott's demand for payment. The court stated:

> The most that can be said for the defendant is that she forgoes the rental value of the property, assuming that is a permissible loss that could be compensated so that there is a serious imbalance of convenience in this case that favors the plaintiffs here....

The court also found that the plaintiffs bore the balance of the hardship. The court stated that there were serious, substantial, difficult and doubtful questions involved in this case. The court further stated that "[w]hether or not these people have an easement that they can enforce seems to me to be clearly a matter of some critical meaning and import to them." The only possible hardship for Scott was that she would not receive the rental value of the property.

Finally, the court addressed the issue of public interest as follows:

> I don't know if the public interest is really one of the standards that we get into in a non-governmental case, although to the extent that one can say that we have an interest in dealing fairly with people who have legitimate easements.
>
> There is probably no less a compelling argument than dealing fairly with people who make bona fide tax purchases in Maryland.

I am not prepared to say that one [is] more compelling than the other. Right now, at a minimum, those policy arguments are in equipose [sic], but all the other reasons stated, the Court feels that an injunction should continue in favor of the final [sic] home owners pending the final litigation in this case.

Based upon our review of the Record, we cannot say that the trial court abused its discretion in ordering that the *ex parte* injunction be continued as an interlocutory injunction.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.