47 A.3d 625

**Christina D. THOMAS, et al.**

v.

**ROWHOUSES, INC., et al.**

**No. 2102, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 28, 2012.

---

74

Brian S. Brown (Saul E. Kerpelman & Associates, PA, on the brief) Baltimore, MD, for appellant.

Michele R. Kendus (Thomas J. Cullen, Goodell, DeVries, Leech & Dann, LLP, on the brief) Baltimore, MD, for appellee.

Panel: ZARNOCH, HOTTEN and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.[1]

ZARNOCH, J.

This case calls upon us to decide whether substituted service on the State Department of Assessments and Taxation ("SDAT") under Md. Rule 2–124(*o*)[2] is sufficient when a

---

1. Judge Stuart R. Berger did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8–605.1.

2. Section (*o*) of this rule, captioned, "Substituted service upon State Department of Assessments and Taxation," provides:

 Service may be made upon a corporation, limited partnership, limited liability partnership, limited liability company, or other entity required by statute of this State to have a resident agent by serving

corporation has forfeited its charter, has no resident agent, and the only corporate director listed in the articles of incorporation is deceased.[3] In other words, when there is no one else in the corporate house left to serve, is the State the end-game recipient of service of process or do such lawsuits have no opportunity for survival? We hold that under these circumstances, service on SDAT is proper and thus, we remand the case so that the litigation may proceed in the Circuit Court for Baltimore City against the corporation. However, we also affirm the circuit court's conclusion that service on a deceased director's estate is not valid under Md.Code (1975, 2007 Repl. Vol.), Corporations and Associations Article (CA) § 3–515.[4]

---

two copies of the summons, complaint, and all other papers filed with it, together with the requisite fee, upon the State Department of Assessments and Taxation if (i) the entity has no resident agent; (ii) the resident agent is dead or is no longer at the address for service of process maintained with the State Department of Assessments and Taxation; or (iii) two good faith attempts on separate days to serve the resident agent have failed.

3. Even though the parties have failed to include it in the record, we take judicial notice of Rowhouses' corporate charter, which is matter of public record. The articles of incorporation list Eric Patten as sole director and resident agent. Also on file with SDAT is a note that the charter was forfeited for failure to file a property tax return for 2000, a Resignation of Resident Agent in which Eric Patten resigned, dated December 13, 1999 and Articles of Transfer for two other corporations, dated March 30, 1990.

4. Section 3–515 provides:
(a) When the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets for purposes of liquidation.
(b) The director-trustees are vested in their capacity as trustees with full title to all the assets of the corporation. They shall:
(1) Collect and distribute the assets, applying them to the payment, satisfaction, and discharge of existing debts and obligations of the corporation, including necessary expenses of liquidation; and
(2) Distribute the remaining assets among the stockholders.
(c) The director-trustees may:
(1) Carry out the contracts of the corporation;
(2) Sell all or any part of the assets of the corporation at public or private sale;
(3) Sue or be sued in their own names as trustees or in the name of the corporation; and

## FACTS AND LEGAL PROCEEDINGS

On October 16, 2006, appellant,[5] Christina Thomas, brought suit against appellees Rowhouses, Inc. ("Rowhouses"), and the Estate of Eric Patten ("the Estate")in the circuit court,[6] requesting damages due to lead paint poisoning. Thomas alleged that from 1987–1991, she resided in a property "owned and/or controlled and/or managed" by Rowhouses where she was exposed to lead paint. By the time suit was filed, Eric Patten, the corporate director whose estate is also an appellee, had died and Rowhouses had forfeited its corporate charter.[7]

Inexplicably, Rowhouses was not served with process through SDAT until November 5, 2009. On July 14, 2009, the circuit court issued a notification of contemplated dismissal, pursuant to Md. Rule 2–507, which prompted Thomas to file a motion to defer entry of the order of dismissal. On October 13, 2009, the court issued an Order Deferring Dismissal "to permit additional attempts of service." The order stated: "[i]f service has not been made on the Defendant(s) by the deferral date [January 15, 2010], the clerk shall enter on the docket, 'Dismissed for lack of jurisdiction without prejudice' immediately as to all un-served Defendants." The clerk never made this entry on the docket, but as later actions indicate, treated January 15, 2010 as the date of dismissal.[8] On March 24,

---

 (4) Do all other acts consistent with law and the charter of the corporation necessary or proper to liquidate the corporation and wind up its affairs.

 (d) Majority governs.—The director-trustees govern by majority vote.

5. Although the case caption indicates otherwise, we will refer to Christina Thomas as the sole appellant. When suit was originally filed, Thomas was a minor, and this suit was brought by her aunt, Shirley L. Phillips. However, it appears that Phillips is not a party to this appeal because Thomas is no longer a minor.

6. There were several other defendants named in the original suit, including Eric Patten personally, but appellees are the sole remaining defendants.

7. Appellees argue that when suit was filed, there was another surviving director, Ival Cianchette, who has since died.

8. The parties disagree about the correctness of this dismissal. Thomas argues that there was never an order issued dismissing the Estate of

2010, Thomas filed a Request to Reissue Summons.[9] On May 18, 2010, Joy Kennedy, Eric Patten's personal representative, accepted service on behalf of the Estate. On August 19, 2010, the Estate attempted to file an answer, which the circuit court clerk rejected because the clerk regarded the case as dismissed on January 15, 2010.

On August 19, 2010, Rowhouses filed a motion to dismiss for insufficiency of service of process. On September 27, 2010, the Estate filed a motion to quash summons and vacate service. Following a hearing on October 20, 2010, the circuit court issued an order granting both motions. In an oral ruling, the circuit judge said:

[T]he clear and unambiguous language of the statute [CA Art. § 3–515] does not permit service of process upon the personal representative of the estate of a deceased director. The statute only permits service upon a surviving director. In addition, regarding service on the State Department of Assessments and Taxation[,] because a forfeited corporation is not a legal entity, the Maryland Rule 2–124(o ) does not apply.

This appeal followed.

## QUESTIONS PRESENTED

Thomas presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion i[n] granting Appellee Rowhouses, Inc's Motion to Dismiss for Insufficiency of Service of Process.

2. Whether the trial court erred and/or abused its discretion in granting Appellee Estate of Eric Patten's Motion to Quash Summons and Vacate Service.[10]

We answer yes to the first question and no to the second.

_____

Patten from the case. Appellees argue that no additional order was necessary because the October 13, 2009 order was sufficient. Because we uphold the dismissal of the estate on the grounds stated in the circuit court's decision, we need not resolve this sidebar controversy.

9. Thomas also filed requests to reissue summons on October 20, 2009 and December 1, 2009.

10. Thomas also argues that denying her the right to sue the Estate and Rowhouses, via service on SDAT, would deny her a remedy for the

## DISCUSSION

### I. Standard of Review

This case presents questions of statutory (and rule) interpretation, and "[w]e review a trial court's interpretation . . . through a non-deferential prism." *Polek v. J.P. Morgan Chase Bank, N.A.,* 424 Md. 333, 350, 36 A.3d 399 (2012) (internal citations omitted). *See also State ex rel. Lennon v. Strazzella,* 331 Md. 270, 273, 627 A.2d 1055 (1993) ("To interpret rules of procedure, we use the same canons and principles of construction used to interpret statutes.") When a circuit court grants a motion to dismiss, we must determine whether the court was "legally correct in its decision to dismiss." *Menefee v. State,* 417 Md. 740, 747, 12 A.3d 153 (2011).

### II. Service on SDAT

#### A. Contentions of the Parties

Thomas contends that service on SDAT was proper because Md. Rule 2–124(*o* ) is not limited to existing corporations. She argues that there is nothing in the plain language of its provisions preventing substituted service on SDAT in this case. Thomas also emphasizes that Rule 2–124(*o* ) applies when a corporation has no resident agent, which is clearly the case here. In turn, appellees argue that Md. Rule 2–124(*o* ) does not apply to a defunct corporation, but applies only to situations where an active corporation has a resident agent and that agent is not accessible for service. They also argue

---

alleged wrong committed against her in violation of Article 19 of the Maryland Declaration of Rights. Appellees contend that Article 19 is not implicated in this case, because Thomas did have an adequate remedy: she could have sued Ival Cianchette, a director allegedly surviving at the time suit was filed. Because we hold that service of process was proper on SDAT, there is no need for us to address this argument.

that a defunct corporation is not "required" to have a resident agent. Thus, Rule 2–124(*o* ) did not apply.[11]

Appellees further contend that service upon Rowhouses cannot be achieved through SDAT, but can only be made on a surviving director-trustee of the forfeited corporation, who, at the time suit was filed, was Ival Cianchette.[12] The circuit court agreed with appellees, finding that "Rule 2–124(*o* ) provides for substituted service in limited circumstances. And this court finds that it clearly does not apply to a defunct corporation, a forfeited corporation."

Ordinarily, service on a corporation is governed by Md. Rule 2–124(d), which provides:

Service is made upon a corporation, incorporated association, or joint stock company by serving its resident agent, president, secretary, or treasurer. If the corporation, incorporated association, or joint stock company has no resident agent or if a good faith attempt to serve the resident agent, president, secretary, or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process.[13]

---

**11.** Actually, Rule 2–124(*o* ) states service "may" be made upon the enumerated entities, including a corporation "required by statute of this State to have a resident agent." *See* p. 15, *infra.*

**12.** According to Rowhouses' counsel, Cianchette was alive when the suit was filed, but died before service was made on any defendant. It appears that Cianchette's name surfaced for the first time, not in any piece of evidence, but in a reply memorandum filed by Rowhouses in the circuit court.

**13.** This rule complements CA § 1–401 which states:

(a) Service of process on the resident agent of a corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust, or any other person constitutes effective service of process under the Maryland Rules on the corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust, or other person in any action, suit, or proceeding which is pending, filed, or instituted against it under the provisions of this article.

As the undisputed facts make clear, at the time of service on SDAT, Rowhouses did not have a resident agent or any of the other corporate members listed in Md. Rule 2–124(d) who could have been served.[14]

## B. Impact of Forfeiture

 Under Maryland law, when a corporation has forfeited its corporate charter or has been dissolved—whether judicially, administratively, voluntarily or involuntarily—it is generally said to be "a legal non-entity" and "all powers granted to [the corporation] by law, including the power to sue or be sued, [are] extinguished generally as of and during the forfeiture period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163, 857 A.2d 1095 (2004). Typically, "no suit can be brought against a forfeited corporation, except to the extent and under circumstances specifically authorized by statute." *Georgetown College v. Madden*, 505 F.Supp. 557, 602 (D.Md. 1980). However, state law makes it clear that a corporation continues to exist, at least for some limited purposes beyond forfeiture or dissolution of its charter.

 According to CA § 3–515, "[w]hen the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the

---

(b)(1) Any notice required by law to be served by personal service on a resident agent or other agent or officer of any Maryland or foreign corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust required by statute to have a resident agent in this State may be served on the corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust in the manner provided by the Maryland Rules relating to the service of process on corporations.

(2) Service under the Maryland Rules is equivalent to personal service on a resident agent or other agent or officer of a corporation, partnership, limited partnership, limited liability partnership, limited liability company, or real estate investment trust mentioned in paragraph (1) of this subsection.

**14.** In a reply memorandum in the circuit court, appellees also threw out the name of one Jackie Woolf, who also "may have been" a director.

trustees of its assets for purposes of liquidation." This "corporate survivor" statute allows the director-trustees to sue or be sued "in the name of the corporation." The Court of Appeals has interpreted CA § 3–515 to grant directors-trustees power "only for the 'winding up' of a corporation's affairs." As a consequence, "a trustee only may sue in the trustee's own name if there is a 'rational relationship' between the suit and a legitimate 'winding up' activity of the corporation." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 163–164, 857 A.2d 1095 (2004) (internal citations omitted). However, "winding up" also generally includes paying all debts, obligations and liabilities of the corporation, distributing property and resolving pending suits against the corporation. *See* Fletcher Corporate Forms at § 3671 (4th ed.2001); and 16A Fletcher Cyclopedia of the Law of Corporations at § 8141 ("Fletcher"). Thus, under CA § 3–515, a corporation, whose charter has been forfeited and which is in the process of "winding up," is still "alive" for purposes of being sued to satisfy its debts and liabilities.

Fletcher, at § 8142, has a highly informative discussion of the development and operation of corporate survivor statutes such as CA § 3–515:

At common law, a dissolved corporation ceased to exist and could not sue or be sued in its corporate name. A dissolved corporation was not amenable to process, and was incapable of making an appearance or of authorizing an attorney to make an appearance on its behalf. A proceeding to enforce a judgment against a corporation, or to set aside or vacate a judgment in its favor, could not be maintained after its dissolution. The common-law rule was predicated on dissolution by operation of law and did not apply if the corporation had merely ceased doing business, if the corporation was engaged in winding up its business and affairs, or if the corporation was seeking to protect its assets.

In most states, dissolution of a corporation no longer has the effect of foreclosing lawsuits by or against the corporation. Most state corporation statutes expressly reverse the common-law rule by providing that dissolution of a corpora-

tion does not prevent commencement of a proceeding by or against the corporation in its corporate name. . . .

> *[A]ll jurisdictions* . . . have statutes that provide to some degree for the survival of remedies or claims for a limited period of time after dissolution of the corporation. Such statutes are remedial in nature and given a liberal construction.

(Emphasis added). *Id.* at § 8142. *See also* 19 Am.Jur.2d *Corporations* (2004) at § 2475 ("Under statutory authority, the effect of the dissolution of a corporation has been described as not so much a change in its status as a change in its permitted scope of activity. Thus, it is held that dissolution does not destroy a corporation, or terminate its existence. Rather, upon dissolution, a corporation continues its existence, though its existence is limited, and the corporation generally may not carry on any business except to wind up and liquidate its business. Under this authority, dissolution is best understood not as the corporation's death, but merely as its retirement from active business.") *See also id.* at § 2427. (*"[A]ll jurisdictions* now have statutes dealing with the matter of litigation by and against corporations after dissolution.")(Emphasis added).

Fletcher goes on to discuss the impact of dissolution on the "winding up" corporation's ability to accept service and its duty to continue to maintain a resident agent:

> At common law, the dissolution of a corporation revoked the authority of the agent who was authorized to receive service of process or other notices. The dissolution of a corporation no longer has the effect of terminating the authority of the agent authorized to receive service of process, at least so long as the statutory period for winding up has not expired. *Thus, service of process is valid and proper when it is served upon the registered agent of the corporation or an officer of the corporation authorized to receive service of process. If the registered agent or an authorized officer of the corporation cannot be found in the state, substituted service upon the secretary of state, or on the person general-*

*ly authorized for service of process on a non-dissolved corporation, is proper . . . .*

(Emphasis added). Fletcher at § 8146. *See also* 19 Am. Jur.2d *Corporations* (2004) at § 2433 ("Where a dissolved corporation is continued for a certain period of time for purposes of winding up its affairs, process may be served on the corporation. Observation: When the Secretary of State administratively dissolves a corporation for failing to submit its annual registration statements, some vestige of the corporate entity remains so that a creditor may still sue the corporation and serve the corporation by serving process upon the Secretary of State.")

Out-of-state cases support Fletcher's observations. An ALR annotation provides the following summary of law nationwide concerning service of process on defunct or dissolved corporations:

Laws providing that service of process upon a corporation may be made, under certain circumstances, upon the secretary of state have been held in a few cases to be applicable to dissolved corporations, but there is authority to the effect that service upon such official was ineffective where the corporation was dissolved before the enactment of the statute providing for such service. In the majority of the cases in which the question has arisen it has been held that service of process upon a dissolved corporation was effective where made upon corporate officers, directors, or agents who had been qualified to accept service on behalf of the corporation while it was a going concern, and this has been held especially true where there was statutory provision for the continuance of activities by the corporation in so far as necessary to wind up its affairs.

Annot.: *Service of process upon dissolved domestic corporation in absence of express statutory direction,* 75 A.L.R.2d 1399 (1961) at § 1(b).

In *Sisk v. Old Hickory Motor Freight, Inc.,* 222 N.C. 631, 24 S.E.2d 488 (1943), the Supreme Court of North Carolina addressed whether service was proper on the secretary of

state as to a defunct corporation when there was a statute which provided the following:

> Every corporation ... shall have an officer or agent in the county where its principal office is located upon whom process can be had, and shall at all times keep on file with the secretary of state the name and address of such process officer or agent, and upon the return of any sheriff or other officer of such county that such corporation or process officer or agent cannot be found, service may be had upon such corporation by leaving a copy with the secretary of state, who shall mail the copy so served upon him to the process agent or officer at the address last given and on file with him, or if none, to the corporation at the address given in its charter; and any such corporation so served shall be in court for all purposes from and after the date of such service on the secretary of state.

*Id.* at 489.

In *Sisk,* the North Carolina Supreme Court rejected the contention that this alternative service of process statute did not apply to a forfeited corporation. The Court held that the service of process statute needed to be read in harmony with another North Carolina law, which allowed the continuation of a defunct corporation for the purpose of being sued. *Id.* The Court explained:

> The provision for service upon the Secretary of State is not in the nature of a penalty upon the corporation for not having an agent upon whom process could be had, and not keeping the name of such agent on file with the Secretary of State, which might be condoned because of the alleged inability of the corporation to comply with the statute. It is a device for public convenience and is sustained upon the theory that it is reasonably adequate notice, either to be employed alternatively or where other forms of notice are unavailable.

*Id.* at 490.

Although now superseded by a change in statute, *Kopio's, Inc. v. Bridgeman Creameries, Inc.,* 248 Minn. 348, 79 N.W.2d

921 (1956), is also noteworthy. There, the Supreme Court of Minnesota applied its statute for alternative service on the secretary of state to a defunct corporation. The statute's language provided, "if a domestic corporation had no officer within the state upon whom service could be made, service of summons upon the corporation might be had by serving the secretary of state in the manner specified." *Id.* at 927. The Court relied on the general proposition that, "where a corporation may be sued after its dissolution, process may ordinarily be served upon the same persons or officers who could have been properly served if the corporation had not been dissolved." *Id.* at 926. After a review of out of state authority, the Court observed, "[s]ervice on the secretary of state under such statute is uniformly held to constitute valid service on a dissolved corporation whose existence has been extended for the purpose of defending suits." *Id.* at 927.

The Court of Appeals of Wisconsin also found that its statute providing alternative service on the secretary of state applied to a dissolved corporation, although not explicitly mentioned in the statute's language. The statute provided, "[w]henever a corporation fails to appoint or maintain a registered agent in this state, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such corporation upon whom any such process ... may be served." *Wisconsin Finance Corp. v. Garlock*, 140 Wis.2d 506, 410 N.W.2d 649, 652 (App.1987).

In summary, these out of state cases hold that if there is a statutory provision extending the life of the corporation for suit or winding up the corporation's affairs, service may be made in any method which would have been appropriate when the corporation was in existence.

A case from the U.S. District Court for Maryland has interpreted service on SDAT to be proper under Rule 2–124(*o* ) when the defendant corporation's resident agent was "no longer at the address reflected in SDAT's records." *Biktasheva v. Red Square Sports, Inc.*, 366 F.Supp.2d 289, 293

(D.Md.2005) (Internal citations omitted). The court went on to remark that the plaintiff's continued subsequent attempts "to serve Defendant personally by locating a valid address for its resident agent in Gaithersburg, Maryland, is laudable but unnecessary to establish that process was properly served." *Id.* (internal citations omitted). In essence, when the resident agent cannot be located according to SDAT records, alternative service on SDAT has been deemed proper.

■ In our view, consistent with these authorities, Md. Rule 2–124(*o* ) must be read together with the text and purpose of CA § 3–515. This conclusion is not just a product of a wise canon of construction regarding related provisions, it also reflects the express intent of the General Assembly in CA § 1–401 that recognizes the interrelationship of statutory provisions governing service on corporations and the Maryland Rules of Procedure. *See* n. 12, *supra.* If the rule and statute are construed together, when a technically defunct, but winding up corporation, has no resident agent, service on SDAT is entirely appropriate and consistent with Rule 2–124(*o* ).

Rowhouses argues that a defunct corporation in "winding up" mode is not *required* to have a resident agent and that therefore, Rule 2–124(*o* ) does not apply. However, CA § 3–515 rebuts that contention, because it authorizes suits against the corporation and in its own name. When the General Assembly has expressly authorized such actions against a defunct corporation, why should the rules be read as closing a reasonable avenue to the prosecution of such suits? Moreover, Rowhouses' position is inconsistent with CA § 2–108(a)(2) ("Each Maryland corporation shall have . . . [a]t least . . . one resident agent.") and caselaw generally, *see* Fletcher, *supra,* at § 8146. In addition, the text of Rule 2–124(*o* ) applies not only when a resident agent is inaccessible, but also when a resident agent "is dead," as is the case here.[15]

---

**15.** From filings with SDAT, it appears that Eric Patten resigned as resident agent before the corporation's charter was forfeited and that no substitution was made. *See* n. 2, *supra.* Such an action clearly would not render Rule 2–124(*o* ) inapplicable.

Nonetheless, appellees argue that prior to effectuating service, Thomas "failed to diligently pursue service upon other available surviving directors, including one upon whom Thomas' counsel had successfully obtained service in at least one prior case." This argument, which was not addressed by the circuit court, is flawed. First, no director, other than Eric Patten, was listed in the articles of incorporation for Rowhouses; and secondly, the allegedly surviving director appellees suggested Thomas should have served, Cianchette, died during the course of the proceedings. Had Thomas served Cianchette, she would have been in the same position.

The Court of Appeals has held that when a plaintiff wants to sue the director-trustees of a corporation no longer in existence, he or she is required to "undertake a reasonable search for the identity of the director-trustees." The source of Rowhouses' "reasonable search" requirement is our decision in *Scott v. Seek Lane Venture, Inc.*, 91 Md.App. 668, 605 A.2d 942 (1992). In that case, we upheld the setting-aside of a foreclosure of an equity of redemption of property of a defunct corporation. The appellee knew the corporation was defunct and made no attempt to make a reasonable search for the identity of the director-trustees. *Id.* at 687, 605 A.2d 942. The appellee failed to examine "the corporation's articles of incorporation, which were available in the corporate records of the Circuit Court for Montgomery County," and which contained the last known addresses and names of the director-trustees. *Id.* However, this case is distinguishable from *Scott*, not only because it occurred in a pre-judgment, non-abusive setting,[16] but also because the articles of incorporation only mention Eric Patten as a director of Rowhouses.[17]

---

16. *Scott* noted that "the plaintiff in a foreclosure of a right of redemption action often stands to benefit from failed attempts to notify the defendant(s)." *Id.* at 683, 605 A.2d 942.

17. Rowhouses makes a due process argument concerning service. However, even if this issue had been decided below, we find this argument to be without merit. The purpose of alternate service on the SDAT is to provide a method "which will reasonably insure the ultimate reception by the corporat[ion] of actual notice that an action has been

Certainly *Scott* does not suggest that CA § 3–515 establishes that individualized service on director-trustees is the exclusive method of service when a corporate charter has been administratively forfeited, and the corporation is without a resident agent, has notice of a lawsuit, and is represented by counsel. We hold that service on SDAT was proper in this case and reverse the circuit court's grant of Rowhouses' motion to dismiss.[18]

## III. Estate of Eric Patten

■ Thomas also contends that because Patten, as trustee, would have been individually subject to service for claims against Rowhouses, it follows that his estate should also be able to accept service on behalf of the corporation. Appellees state that Thomas' argument is legally flawed, as corporations are only subject to service in the manner allowed by law. We agree with appellees that service on the Estate of Eric Patten would not constitute proper service of process with respect to Rowhouses.

Individual liability differs from corporate liability. Although Patten was a trustee for Rowhouses, no law establishes that his estate could become a trustee as well. The plain

---

filed against it. The Rule does not guarantee or insure that actual notice will, in fact, be received by the corporat[io]n; its use does insure that the corporation will be afforded due process of law." *J. Whitson Rogers, Inc. v. Hanley*, 21 Md.App. 383, 392, 319 A.2d 833 (1974). It is apparent that Rowhouses, which was represented by counsel, both here and in the circuit court, has had sufficient notice of Thomas' lawsuit.

18. In many jurisdictions, statutes establish a deadline for the winding up of corporate affairs. *See* Fletcher at § 8144. Maryland law does not appear to have such a deadline. According to 19 Am.Jur.2d *Corporations, supra,* at § 2444, "[W]here a statute providing for the dissolution of a corporation does not provide the length of time which the trustees, after dissolution, may continue to act for the dissolved corporation, a reasonable time should be allowed." We express no view on whether such a reasonable time limitation applies to CA 3–515 and, if so, whether it has been exceeded. Also, we express no view on whether Thomas could or should have sought appointment of a receiver to prosecute her action against Rowhouses.

language of CA § 3–515 does not include the estate of the former director.

Accordingly, we affirm the circuit court's dismissal of claims against appellee Estate of Eric Patten.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART, REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.**