920 A.2d 18

**Erin BROWN, et ux.**

**v.**

**Grace SMITH, et al.**

**No. 0929 Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 29, 2007.

460

462

464

Robert A. Meier, Jr., Damascus, MD, for Appellants.

Earl W. Bartgis, Jr., Frederick, MD, for Appellees.

Panel: ADKINS, JAMES A. KENNEY, III,* (Retired, Specially Assigned), RAYMOND G. THIEME, JR. (Retired, Specially Assigned) JJ.

---

* Kenney, J., participated in the hearing and conference of this case while an active member of this Court; he participate in the adoption of this opinion as a retired, specially assigned member of this Court.

ADKINS, Judge.

In this case, we must examine the nature of a nominal damages award, and whether there is a maximum limitation on the dollar amount that can be considered nominal damages. We do so in the context of a claim that appellants and cross-appellees Erin and Norma Brown trespassed on property owned by Grace and Viola Smith, appellees and cross-appellants, by traveling over a farm lane to access a public road from the Browns' property. The Browns appeal from the circuit court's decision that they had no right to use the farm lane, and from its award of $8,350 in "nominal damages" against the Browns.

The Browns raise five issues, which we reorder and restate as follows:

I. Is there a final appealable judgment, even though no judgment was entered on the third party complaint against neighbor and appellee Patricia Wolfe?

II. Did the trial court err in failing to find that the common grantor intended to create mutually reciprocal rights of way appurtenant to the Smith and Brown properties, via three 1875 deeds to the three parcels abutting the right of way?

III. Did the trial court err in failing to find the three deeds ambiguous?

IV. Did the trial court err in awarding "nominal damages" of $8,350 on the Smiths' trespass claim? [1]

---

1. The Browns state their questions as follows:
 I. Did the trial court err in admitting, over objection, as expert testimony, evidence from Appellees' Smiths' witness as to either or both of the witness's factual and legal conclusions?
 II. Did the trial court err in awarding "nominal damages" of $8,350.00.
 III. Was a final appealable judgment entered by the trial court, notwithstanding that it did not enter judgment on the Third Party Complaint or the request of Plaintiffs for injunctive relief.
 IV. Did the trial court err in failing to give meaning to the intent of the original grantor of all three tracts of land which are the subject matter of this case.

V. Did the trial court err in admitting expert opinion testimony?

In their cross-appeal, the Smiths raise a single issue:

VI. Did the trial court err in failing to enjoin the Browns from further trespass?

We conclude that there is a final judgment, and that the trial court did not err in admitting expert testimony, in interpreting the deeds, or in denying injunctive relief. We also conclude that the $8,350 damage award on the trespass count is too high to be a "nominal damages" award, and remand for reconsideration of that issue.

## FACTS AND LEGAL PROCEEDINGS

### The Properties And Dispute

On April 1, 1875, the Estate of John Harshman (the Estate)[2] divided Harshman's farm in the Myersville area of Frederick County, by issuing the three deeds that lie at the heart of this dispute. The three resulting parcels abut each other at a common corner. Title to the affected properties is now held by the following persons, all of whom are parties in this case:

- Sisters Grace and Viola Smith, appellees and cross-appellants, trace their title back through five generations, when their ancestor Josiah Smith received one of the three deeds in question from the Estate of John Harshman.

---

V. Did the trial court err in failing to find the three deeds at issue in this case ambiguous and thereby erroneously declare that Appellants have no right of way through the land of Appellees.

2. The deeds at issue identify the grantors as "Daniel Harshman and Margaret Harshman his wife John T. Harshman and Nancy J. Harshman his wife of Frederick County," and recite in substantially similar language that "the said Daniel and John T. Harshman were authorized by a Deed of Trust from the legal heirs of John Harshman late of Frederick Co. deceased to sell and convey the Real Estate belonging to said deceased[.]" We shall refer to these joint grantors collectively as the Estate.

The Smiths were born on this property, where they still live and farm dairy cows, sheep, and heifers.

- Spouses Erin and Norma Brown, appellants and cross-appellees, purchased the parcel adjacent to the Smith parcel on August 17, 2000. Their title traces back to a deed from the Estate to Ezra Harshman. This parcel is a subdivided portion of the property originally conveyed to Ezra Harshman. The Browns view it as an ideal location to raise quarter horses and to train them for the sport of "cutting," in which a horse separates a marked heifer from the rest of the herd.

- Patricia Wolfe, appellee, owns the parcel east of the Browns, which abuts Harp Hill Road. She derives her title from a third deed issued by the Estate, this one to Jacob L. Moser. Wolfe was brought into the dispute between the Browns and Smiths as a necessary third party defendant.

The Browns' parcel does not have direct access to a public road, but does have a right of way north to Pleasant Walk Road, across an adjacent property that is not involved in this litigation. Although the Browns have this northern access route, they contend that they also have a second right of way to use a farm road built and maintained by the Smiths. This lane passes along a portion of the southern boundary between the Brown and Smith parcels, then continues past the eastern boundary between the Brown and Wolfe properties, across land owned by the Smiths and out to Woodland Way Road, which lies along the eastern boundary of the Wolfe parcel. This lane is the Smiths' sole route from their home and farm to a public road.

Citing representations made by their seller, real estate agents, and surveyors that their property has the use of a deeded right of way to the public road east of the property, the Browns claim the right to use this farm lane. They have two reasons to prefer this route to the longer one across their own property leading to Pleasant Walk Road. First, the home they built during this dispute is situated near the southern boundary of their property, close to where the farm lane

passes, making this route their most convenient to a public road. Second, by using the farm lane to Woodland Way Road, rather than crossing the full length of their own property to reach the right of way to Pleasant Walk Road, the Browns can pasture their horses without exposing them to the ingress and egress traffic generated by the Browns, their contractors, and business-related visitors.

The Smiths deny that the Browns have a right of way over any part of their property, asserting that the Smith family has had exclusive and peaceful use of the farm lane for more than one hundred years. The Smiths have used this lane for at least sixty years, traveling it several times each day during their dairy operations and to reach their residence. A fence erected long ago between the lane and what is now the Brown property has a system of gates, so that the Smiths' farm animals can be pastured safely. The fence and gates have been there in one version or another since 81 year old Grace Smith was in high school.

The debate between neighbors over the use of this farm lane escalated beyond words. Shortly after the Browns moved in, Erin Brown confronted the Smith sisters on the disputed lane. After introducing himself, he advised them that he intended to build a house and to use their farm lane to access Woodland Way Road. Over the Smiths' objections, the Browns removed a tree and cut a hole in the fence in order to use the lane. The Browns and their contractors continued to use the lane while they constructed a new residence, up until trial. The Smiths complain that the Browns' construction and business traffic has caused damage to their road and property. The Browns concede that there was some damage to the Smith property associated with their construction traffic.

At various times, one or the other party has put up or pulled down fences, gates, chains, roadblocks, and locks along the farm lane. The Smiths attempted to stop the Browns from using the lane by locking their gates, but the Browns removed those locks and replaced them with their own, thereby denying the Smiths access to their own property. Moreover, as a result of the Browns having cut a breach in the

fence, replacing locks, and using the lane to access their property, the Smiths could not use portions of their own property to pasture their animals.

## The Deeds In Question

For clarity, we shall identify the three deeds conveyed in 1875 by their modern-day recipients.

- A deed to the Smiths' predecessor, Josiah Smith (the Smith Deed), conveys a portion of the "Home Farm," as the original property of John Harshman was known. A right of way is created and described in the Smith Deed as follows:

 **Also the right of way or privilege of making and using conjointly with John T. Harshman and Jacob L. Moser a road** as follows a space 5 foot wide along the 3rd line of John T. Harshman part and 8th line of J.L. Moser' s part then beginning in the middle of said road at the end of 5 feet on the 8th line of said Jacob L. Moser's part and running through said land (20 foot wide) S. 86E., 34 ps to a stone planted N. 32° E. 10-3/4 ps to the end of the 20th line of said "Home Farm" then 15 feet wide on the 19th and 20th line of said Home Farm **to the public road.** (Emphasis added.)

- The deed to the Browns' predecessor, Ezra Harshman (the Brown Deed), conveys an adjacent portion of the Home Farm, immediately to the north of the Smith parcel, with the following exception referencing the right of way created in the Smith Deed:

 **excepting** a piece 5 feet wide along the 3rd line of the 2nd part for use of J. Smith's part and 2nd pt. (Emphasis added.)

- A deed to Wolfe's predecessor, Jacob L. Moser (the Wolfe deed), conveys a third portion of the Home Farm, located directly east of the Brown property and north of the Smith property, with a differently worded exception referring to the right of way created in the Smith Deed:

 **excepting a road or right of way as described [in] Josiah Smith's deed for part of said land[.]** (Emphasis added.)

### Litigation

After the Browns locked the Smiths out of their property, the Smiths filed suit in the Circuit Court for Frederick County. Their claims, as amended, include ejectment, trespass, and quiet title, and the relief sought includes money damages and injunction. The Browns moved to dismiss the Smiths' complaint on the ground that Wolfe was a necessary but unnamed party. The Browns also counterclaimed, asserting disparagement of title, destruction of property, and trespass claims. The motion court then permitted Wolfe to be named as a third party defendant.

After a bench trial, the court issued a written opinion and judgment, concluding *inter alia* that a right of way to use a specified lane over the plotted course was explicitly created in the Smiths' chain of title, but that there was no right of way granted to the Browns over the Smiths' property that would entitle the Browns to use the lane.[3] It awarded the Smiths "nominal damages of Five (5) Dollars ... on the Ejectment Count," plus "nominal damages of five (5) Dollars per day (from August 2000 through March 11, 2005—approximately 1,670 days) for a total of ... $8,350 ... on the Trespass Count[.]"

### DISCUSSION

#### Rights Of Way

 "An easement is broadly defined as a nonpossessory interest in the real property of another, and arises through

---

3. The court also recognized that the Smiths had occupied a five foot strip along the boundary of the Browns' property under circumstances that might establish adverse possession. The court concluded that, "[a]lthough the Smiths could claim adverse possession to the five foot strip going along their property by the evidence," this strip of land was not conveyed by any of the three 1875 deeds, and was therefore reserved by the Estate. The trial court declined to issue a declaration with respect to this property, because "neither the heirs of John Harshman, the father, or the heirs of John T. Harshman, the son, was made a party to the action at issue." In light of our decision, we do not address this aspect of the trial court's opinion.

express grant or implication." In general, the terms "easement" and "right-of-way" are regarded as synonymous.... "In every instance of a private easement-that is, an easement not enjoyed by the public-there exists the characteristic feature of two distinct tenements-one dominant and the other servient." ...

The owner of the dominant tenement is entitled to use the easement only in such manner as is fairly contemplated by his grant, whether expressly or implied, and the owner of the servient tenement is entitled to use and enjoy his property to the fullest extent consistent with the reasonably necessary use thereof by his neighbor in accordance with the terms and conditions of the grant.... "[I]t is axiomatic that the owner of a servient tenement cannot close or obstruct the easement against those who are entitled to its use in such manner as to prevent or interfere with their reasonable enjoyment."

*Miller v. Kirkpatrick*, 377 Md. 335, 349–50, 833 A.2d 536 (2003) (citations omitted).

## I.

### Final Judgment

The Browns complain that the trial court failed to enter judgment on their third party complaint against Wolfe, and they "are entitled" to such a ruling in order to make the trial court's judgment final and appealable. In support, they cite the well-established rule that a decision adjudicating fewer than all of the claims in an action is not a final judgment. *See* Md. Rule 2–602(a).

A judgment may be final for appeal purposes, even when it does not substantively adjudicate the merits of all claims and all parties, if it concludes litigation in the circuit court.

[A] trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties. Where a trial court's order has "the effect of putting the parties out of

court, [it] is a final appealable order." *Houghton v. County Comm'rs. of Kent Co.*, 305 Md. 407, 412, 504 A.2d 1145 (1986), and cases there cited. *See, e.g., Wilde v. Swanson*, 314 Md. 80, 85, 548 A.2d 837 (1988) ('An order of a circuit court [may be] a final judgment without any adjudication by the circuit court on the merits'); *Doehring v. Wagner*, 311 Md. 272, 275, 533 A.2d 1300 (1987) (trial court's order 'terminating the litigation in that court' was a final judgment); *Walbert v. Walbert*, 310 Md. 657, 661, 531 A.2d 291 (1987) (circuit court's unqualified order was a final judgment because it "put Denise Walbert out of court, denying her the means of further prosecuting the case at the trial level") . . . .

*Horsey v. Horsey*, 329 Md. 392, 401–02, 620 A.2d 305 (1993). "Thus, an order entered on the docket pursuant to Rule 2–601, and having the effect of terminating the case in the circuit court, is a final judgment." *Montgomery County v. Revere Nat'l Corp.*, 341 Md. 366, 378, 671 A.2d 1 (1996).

 Here, the trial court's "opinion and order" recognized that the Browns "filed also a Third Party Complaint against Patricia Wolfe ... requesting ... a Declaratory Judgment setting forth the rights of all of the parties[.]" In essence, the Browns sought a declaration that they had a right to travel over the portion of the farm lane running adjacent to Wolfe's property. The third party complaint was tried at the same time as the complaint and counterclaim. The court ruled that "the language is clear in both the Brown and Wolfe deeds as to what is excepted from the fee simple conveyances in both chains of title." It ultimately held that the right of way granted in the Smith Deed is "not for the use of Brown."

After this decision was issued, judgment was entered in favor of the Smiths on both counts in the Smiths' complaint. As we discuss more fully in later sections, the court's decision rested upon its conclusion that no deed in the Browns' chain of title included the conveyance of any easement over or about the farm lane leading to the public road. Thereafter, the trial court was specifically asked to enter judgment on the Browns'

third party complaint against Wolfe, via post-trial motions to alter or amend the judgment. Judgment in favor of Wolfe on this counterclaim is the only result consistent with the court's determination on the Smiths' claim against the Browns. The trial court denied such relief without stating its reasons.

We interpret the court's denial to rest on its belief that its existing opinion and order covered the third party complaint. In any event, the Browns had no means to pursue their contentions. The judgment is therefore final. *See, e.g., Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989)("To have the attribute of finality, the ruling must be so final as . . . to deny the appellant the means of further prosecuting or defending his or her rights").

## II. and III.

### Grantor's Intent And Ambiguity

There is no dispute that the Smith Deed created an easement in favor of the Smiths, along the southern boundaries of what are now the Brown and Wolfe parcels, leading to Woodland Way Road. The contested issue is whether there is a reciprocal easement in favor of the Browns, so that they can travel eastward from their property, along the right of way located between the Smith and Wolfe properties, to reach Woodland Way Road. Randall Rolls gave his expert opinion that none of the three 1875 deeds from the Estate gave the Browns a right of way to Woodland Way Road over the Smith property. The trial court agreed, ruling that "the five foot right of way that traverses the Smith fee simple property is for the use of John T. Harshman and the Smiths," so that "there was no right of way granted" to Ezra Harshman, the Browns' predecessor in title.

The Browns argue that the trial court erred "in failing to give meaning to the intent of the original grantor of all three tracts of land[.]" In their view, "the grantor's intent was to provide all three parcels with access to Woodland Way Road[,]" and "any interpretation to the contrary would, quite simply, make no sense." The Browns rely on language in the

Smith Deed, which establishes the right of way and states that it must be used "conjointly with John T. Harshman and Jacob L. Moser," as well as references to the Smith right of way in the Brown and Wolfe Deeds. According to the Browns, these cross-references demonstrate the Estate's intent to ensure mutual use of the entire length of the road by all three of the Estate's grantees. Thus, they have not only the right to travel any portion of the right of way that crosses over their southern boundary with the Smiths, but also the right to use the portion of the right of way beyond the eastern border of their property as it crosses the Wolfe and Smith parcels before reaching Woodland Way Road. Alternatively, the Browns contend, the trial court erred in failing to find the three deeds ambiguous.

Deeds granting an easement are to be strictly construed, using "the basic principles of contract interpretation[.]" *See Miller v. Kirkpatrick*, 377 Md. 335, 351, 833 A.2d 536 (2003). Courts review the objective meaning of the language in a deed to ascertain and enforce the grantor's intent at the time the deed was delivered. *See id.* "In determining the intent of the parties we must begin with the actual language used in the deed[.]" *Miller v. Bay City Prop. Owners Ass'n, Inc.*, 393 Md. 620, 637, 903 A.2d 938 (2006). Thus, "the extent of an easement created by an express grant depends upon a proper construction of the conveyance by which the easement was created." *See Kirkpatrick*, 377 Md. at 350, 833 A.2d 536.

Language is ambiguous "if, when read by a reasonably prudent person, it is susceptible of more than one meaning." The determination of ambiguity is a question of law, subject to de novo review. When the words in a deed " 'are susceptible of more than one construction,' " the deed is " 'construed against the grantor and in favor of the grantee[.]' "

*Gregg Neck Yacht Club, Inc. v. County Comm'rs of Kent County*, 137 Md.App. 732, 760, 769 A.2d 982 (2001) (citations omitted).

██ We begin our analysis with the Brown Deed, which does not contain language granting an easement. Instead, the Brown Deed contains only an exception from that fee simple conveyance. This exception is described as "a piece 5 feet wide along the 3rd line of the 2nd part for use of J. Smith's part and said 2nd pt." Similarly, the Wolfe Deed does not contain language granting an easement, but only an exception for "a road or right of way as described Josiah Smith's deed for part of said land[.]"

We agree with the trial court that "the language is clear in both the Brown and Wolfe deeds as to what is excepted from the fee simple conveyance in both chains of title." The Brown Deed recognizes that those in Josiah Smith's chain of title have a right of way that crosses the Brown property. Similarly, the Wolfe Deed recognizes an analogous easement appurtenant to the Smith property. By excepting the Smith easement from both conveyances, the Brown and Wolfe Deeds acknowledge that the right of way granted in the Smith Deed burdens portions of both the Brown and Wolfe parcels.

Conceding that there is no express grant of a right of way in either the Brown or Wolfe Deeds, the Browns point instead to language in the Smith Deed granting "the right of way or privilege of making and using *conjointly* with John T. Harshman and Jacob L. Moser a road ... to the public road." (Emphasis added.) First, they contend, the term "conjointly" must be construed as evidence that the Estate intended to grant an easement to someone other than Josiah Smith. Second, they argue that the term "conjointly" creates an ambiguity that must be resolved in their favor given such intent by the grantor.

To be sure, the cross-references contained in the Brown and Wolfe Deeds to the right of way granted to Josiah Smith require us to examine the Smith Deed for evidence of the Estate's intent regarding the easement. We do not agree, however, that the Smith Deed supports the Browns' cause, either as evidence of intent to create mutually reciprocal easements in favor of all three parcels, or as an ambiguous

instrument that might be so construed as a matter of fact rather than a matter of law.

As a threshold matter, we find it significant that, even though the Smith, Brown, and Wolfe parcels were deeded by the same grantor on the same day, only the Smith Deed contains language granting an easement, but that language does not refer to the Browns' predecessor, Ezra Harshman. As the careful scrivening in all three deeds demonstrates, this common grantor knew how to create a right of way in a deed to a dominant estate—and did so quite plainly in the Smith Deed—as well as how to carve out a corresponding exception in deeds to the servient estate—as it did in the Brown and Wolfe Deeds. If the Estate intended to give Ezra Harshman the same easement it conveyed to Josiah Smith, it easily could have used similar "granting" language in the Brown Deed.

Consequently, to interpret these three deeds as the Browns advocate would effectively be to judicially revise them by creating property rights that this grantor did not create. In the Brown Deed, we would have to add language granting an easement; in the Smith Deed, we would have to add an exception corresponding to such an easement. Such wholesale amendment of the precise language set forth in these simultaneously executed deeds from a common grantor is not permitted, whether under the guise of construing these deeds or divining the grantor's intent. In our view, the absence of reciprocal granting and excepting clauses in favor of the Browns' predecessor in title evidences the grantor's intent NOT to create a right of way allowing the Browns to travel beyond their property eastward over the Smith property to Woodland Way Road.

We are not persuaded that the term "conjointly" in the Smith Deed mandates a different result, or that it creates an ambiguity. The word "conjoint" means "joined together; combined" or "consisting of, or involving two or more associated entities; joint." *Am. Heritage College Dictionary* (4th ed. 2000). It is clear law that owners of a dominant tenement (here, the Smiths) must use the burdened portion of the

servient estate (the portion of the right of way that lies on the Brown property) jointly with the owners of the servient parcel (the Browns). *See Kirkpatrick,* 377 Md. at 350, 833 A.2d 536. As we read the term "conjointly" in context, consistent with its commonly understood meaning, and *in pari materia* with the Brown and Wolfe Deeds, the Estate merely required Josiah Smith to share the five foot wide right of way as it passes along the boundary between the Smith and Brown parcels.[4] Contrary to the Browns' contention, the Estate's use of the word "conjointly" in the Smith Deed does not mean that the Smiths also must let the Browns travel the entire length of the right of way as it travels past their eastern boundary with the Wolfe parcel. Rather, the deeds collectively instruct that, to the extent the Smiths' five foot wide right of way along the Brown–Smith boundary includes property deeded to the Browns, the Smiths must use that portion of the lane "together with" the Browns. We therefore reject the Browns' argument that, instead of granting Ezra Harshman an easement in his own deed, the Estate granted him one by placing the word "conjointly" into Josiah Smith's deed.

Moreover, we cannot agree that this interpretation is so illogical that it could not be what the Estate intended. Construing the deeds in this manner, i.e., to mean that the Estate did not give the Browns the right to cross the Smiths' property as it continues beyond the eastern boundary of the Brown parcel, makes common sense given the Estate's stated desire to guarantee the Smith parcel a route to the public road. Although the record before us does not conclusively establish the boundary lines created by the original 1875 conveyance, the maps admitted into evidence show that the Brown property has long enjoyed an alternate access route to Pleasant Walk Road,[5] while the Wolfe property has frontage directly on Harp Hill Road.

---

**4.** There is a corresponding obligation to use the property now held by Wolfe "conjointly."

**5.** The parcel now occupied by the Browns is a subdivided portion of the larger parcel originally conveyed by the Estate to Ezra Harshman.

The Smith property, in contrast, has always been "land-locked" by other parcels. The Smith Deed documents the Estate's explicit concern that the Smith parcel have a protect-ed route "to the public road." If the tracts conveyed to Ezra Harshman and Jacob Moser in 1875 each had their own access route to a public road, whereas the tract conveyed to Josiah Smith did not, then only Smith needed a right of way over the full course described in the Smith Deed. To the extent that the properties conveyed to Ezra Harshman (now owned by the Browns) and Jacob Moser (now owned by Wolfe) have enjoyed access to another public road, it is not illogical for the Estate to decline to give Ezra Harshman a *second* access to an *alternate* public road, especially when doing so would burden the already landlocked Smith property.

For these reasons, we find no error in the trial court's interpretation of the three deeds. We affirm the declaration that neither the Smith Deed nor the Brown Deed grants the Browns a right of way to travel east from their property over the Smith property (or the Wolfe property) to reach Woodland Way Road.

## IV.

### Damages

The Browns do not dispute that they traveled onto the Smith property when they used the farm lane as their in-gress/egress route to Woodland Way Road.[6] In closing argu-ment, counsel for the Smiths stated that he was "not gonna try to argue to the [c]ourt there is any basis for any damages

---

Although it is unclear whether the original parcel conveyed to Ezra Harshman fronted on Pleasant Walk Road, it is undisputed that the subdivision process created the parcel subsequently purchased by the Browns and that this parcel enjoys an easement that allows ingress and egress to Pleasant Walk Road.

6. Although the actual location of the farm lane vis-a-vis the right of way granted in the Smith Deed was not conclusively established at trial, the Browns admitted that they and their guests traveled over the Smith property when they used the farm lane to travel between their home and Woodland Way Road.

other than nominal damages if the [c]ourt finds trespassing[.]" Nevertheless, counsel pointed out that "it's been a continuous trespass for over four and a half years," which "[e]ven at a dollar a day that would be over $1,600[.]" The trial court awarded the Smiths "nominal damages of five (5) dollars per day (from August 2000 through March 11, 2005—approximately 1,670 days) for a total of . . . $8,350" on the trespass count.

The Browns complain this was error, *inter alia,* because the total amount of damages exceeds the usual one cent, one dollar, or even one hundred dollars typically awarded for "technical trespass" or other civil wrongs "unaccompanied by evidence of actual loss or injury." *See, e.g., McAllister v. Moore,* 247 Md. 528, 529, 233 A.2d 471 (1967) (nominal damages of one cent were awarded for encroachment upon and interference with the use of a 50 foot strip of land between parcels of the parties); *Wolf v. Levitt & Sons, Inc.,* 267 Md. 623, 625, 298 A.2d 374 (1973) (one cent in nominal damages awarded for single trespass by defendant). *See also Mallis v. Faraclas,* 235 Md. 109, 116, 200 A.2d 676 (1964) (partner's use of partnership money without authorization was a "wrong without attendant harm" that was compensable only in nominal damages); *Shell Oil v. Parker,* 265 Md. 631, 645–46, 291 A.2d 64 (1972) (nominal damages of one dollar awarded where plaintiff failed to prove actual damage resulting from tort arising from billboard falsely stating that another service station was the last before highway exits).

The Smiths counter that there was ample evidence to support the trial court's conclusion that there was daily damage caused by the Browns' trespass on the farm lane. In support, they point to undisputed testimony and documentary evidence that the Browns and their contractors trespassed on the Smiths' property as much as several times each day after August 2000, causing physical damage to the Smiths' land and restricting their use of it for residential and farming purposes. Citing *Tyler v. Cedar Island Club, Inc.,* 143 Md. 214, 122 A. 38 (1923), they contend that the award of $5.00 per day for such trespassing "is entirely appropriate."

The Court of Appeals has held that affirmative proof of the amount of damages caused by a trespass is not necessary to obtain a plaintiff's verdict, because "[e]very unauthorized entry upon the land of another is a trespass, and whether the owner suffers substantial injury or not, [the owner] at least sustains a legal injury, which entitles [the owner] to a verdict for some damages; though they may, under some circumstances, be so small as to be merely nominal." *B & O R.R. Co. v. Boyd,* 67 Md. 32, 40, 10 A. 315 (1887). As the Court explained, in cases where "there is nothing to show that any special damages has been suffered, the principle seems to be established by many respectable authorities that the plaintiff is entitled to recover such compensation as the use of the ground was worth, during the time and for the purpose it was occupied." *Id. See Bittner v. Huth,* 162 Md.App. 745, 752, 876 A.2d 157, *cert. denied,* 389 Md. 125, 883 A.2d 915 (2005); *See also Tyler,* 143 Md. at 219, 122 A. 38 ("the jury were directed to award at least nominal damages, if they found in favor of the plaintiff, even though the defendant's entry resulted in no substantial injury. There was no error in this instruction").

But Maryland has no statute, rule, or case law precedent establishing a ceiling on what may be awarded as nominal damages.[7] Although each trespass is a separate legal injury that could theoretically merit a "per trespass" measure of damages, we have not been directed to any Maryland case that permitted such an award as nominal damages. Nor have

---

7. Unlike Maryland, some jurisdictions have explicitly fixed the amount that may be awarded as nominal damages. *See, e.g., Mollinger–Wilson v. Quizno's Franchise Co.,* 122 Fed.Appx. 917, 923 (10th Cir.2004), *cert. denied,* 544 U.S. 1034, 125 S.Ct. 2272, 161 L.Ed.2d 1061 (2005) ("The Colorado courts have stated that 'one dollar is nominal damages'") (citation omitted); *Mayberry v. Robinson,* 427 F.Supp. 297, 314 (M.D.Pa.1977) ("The rule of law in the Third Circuit is that nominal damages may not exceed $1.00"); *Hummel v. Mid Dakota Clinic, P.C.,* 526 N.W.2d 704, 709 (N.D.1995) (under North Dakota law, "[n]ominal damages are limited to one dollar"); *Fla. Dep't of Corrections v. Niosi,* 583 So.2d 441 (Fla.Ct.App.1991) (nominal damage award should not have exceeded one dollar). *But see* Ga.Code Ann. § 13-6-6 ("In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action").

we found a reported Maryland case of nominal damages that significantly exceed the one cent to one dollar amounts commonly awarded as "nominal" damages.

Most courts that have addressed an excessiveness challenge to a nominal damage award recognize, however, that "[n]ominal damages, as the term implies, are in name only and customarily are defined as a mere token or 'trifling.' " *Cummings v. Connell,* 402 F.3d 936, 943 (9th Cir.2005). Thus, "[r]ecovery of nominal damages is important not for the amount of the award, but for the fact of the award." *Id.* at 945. "Nominal damages are not compensation for loss or injury, but rather recognition of a violation of rights." *Id.* In the absence of authority limiting an award of nominal damages, the prevailing view appears to be that, although the amount of nominal damages "is not limited to one dollar, the nature of the award compels that the amount be minimal." *Id.* at 943. *See also Romano v. U–Haul Int'l,* 233 F.3d 655, 671 (1st Cir.2000), (applying same principle, in interpreting jury award of $15,000 in so-called nominal damages for civil rights violation as a compensatory damage award), *cert. denied,* 534 U.S. 815, 122 S.Ct. 41, 151 L.Ed.2d 14 (2001); *Creem v. Cicero,* 12 Conn.App. 607, 533 A.2d 234, 236 (1987) (" 'Generally, nominal damages are fixed without regard to the extent of harm done and are assessed in some trifling or trivial amount' ") (citation omitted); *The Toledo Group, Inc. v. Benton Indus., Inc.,* 87 Ohio App.3d 798, 623 N.E.2d 205, 211 (1993) (" 'Nominal damages' are some small amount of money, such as $1"); *Texas v. Miles,* 458 S.W.2d 943, 944 (Tex.Civ. App.1970) (" 'Nominal' damages consist of a very small, trivial or inconsiderable sum awarded where, from the nature of the case, injury has been done, but the amount of which the proof fails to show").[8]

---

8. Georgia cases illustrate a contrary view.

 [I]n Georgia, the term "nominal damages" is purely relative, and carries with it no suggestion of certainty as to amount. Instead of being restricted to a very small amount, the sum awarded as nominal damages may, according to circumstances, vary almost indefinitely. In some cases a very small amount might constitute the trivial sum

■ Thus, even though the sum awarded as nominal damages may vary somewhat according to circumstances, nevertheless, the award may be deemed excessive if it cannot reasonably be considered "minimal" in the circumstances of the case. *See, e.g., Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1491 (5th Cir.1990) (vacating award of $10,000 as excessive under Louisiana law); *Chesapeake & Potomac Tel. Co. v. Clay,* 194 F.2d 888, 890 (D.C.Cir.1952) (reducing award of $500 to $1); *Pierson v. Brooks,* 115 Idaho 529, 768 P.2d 792, 800 (Ct.App.1989) ("the sum of $2,500 is more than nominal"); *Davidson v. Schneider,* 349 S.W.2d 908, 913 (Mo.1961) (award of $530 in damages was not a nominal award, but "an effort at measured compensation"); *Fisher v. Barker,* 159 Ohio App.3d 745, 825 N.E.2d 244, 247 (2005) (award of $1,500 was jury's unsupported estimate of value of converted property, not nominal damages); *Barbier v. Barry,* 345 S.W.2d 557, 563 (Tex.Civ.App.1961) ("$10,000 is excessive as nominal damages"); *Keesling v. City of Seattle,* 52 Wash.2d 247, 324 P.2d 806, 809 (1958) ($1 per day damage award for trespass of power transmission line six inches onto plaintiff's property was substantial and unsupported compensatory award, not nominal damages).

■ We will apply this prevailing view because we think that to allow more substantial awards to fall within the rubric

---

contemplated by the term "nominal damages"; in others a much larger amount might measure down to the same standard of triviality. Thus, "nominal" does not necessarily mean "small." Moreover, "[a] recovery may be classified as coming under the definition of nominal damages where the violation of a right is shown, substantial damages claimed, and some actual loss proved, and yet the damages are not susceptible of reasonable certainty of proof as to their extent." *Brock v. King,* 279 Ga.App. 335, 629 S.E.2d 829, 836–37 (2006) (citations omitted). Under this approach, "even though a verdict for nominal damages may be apparently large in its amount, it cannot be set aside simply because the amount is large, absent evidence of prejudice or bias in any incident at trial or a mistake on the part of the jury." *MTW Inv. Co. v. Alcovy Props., Inc.,* 273 Ga.App. 830, 616 S.E.2d 166, 169 (2005) (jury award of $625,000 in nominal damages in wrongful lis pendens action was not excessive as a matter of law). *See also Wright v. Wilcox,* 262 Ga.App. 659, 586 S.E.2d 364, 367 (2003) (jury award of $22,000 in nominal damages for trespass was not excessive).

of nominal damages would vitiate the concept underlying such awards, which is recognition of the violation of a right, not to compensate for actual injury. *See, e.g. Romano,* 233 F.3d at 671 ("Nominal damages are intended to recognize a plaintiff's legal injury when no actual monetary damages may be discerned"); *Henderson v. For–Shor Co.,* 757 P.2d 465, 472 (Utah Ct.App.1988) (defining nominal damages "as 'a trivial sum . . . awarded to a plaintiff whose legal right has been invaded but who has failed to prove any compensatory damages'") (citation omitted).

To affirm a substantial damage award that is categorized by the trial court as "nominal damages" would invite uncertainty for trial judges and juries regarding what are "nominal damages" and how they differ from compensatory damages. When a court or jury makes an actual damages award, it must focus on the nature and extent of the injury to the plaintiff, applying well defined legal principles about how that injury may translate into a dollar amount. *See, e.g., Md. Civ. Pattern Jury Instr.* 10:21 (4th ed. 2006) (for property damages, jury "shall consider" cost of repair, loss of market value, and loss of use). When a court or jury makes a nominal damages award, however, it need not focus on the injury to the plaintiff, but merely on recognition of the right. *See, e.g., id.* at 10:10 (nominal damages are due to a "person who has been . . . the victim of a trespass, . . . but who has not suffered any actual injury"). If we were to allow a judge or jury to award a substantial sum as so-called "nominal damages," which are neither based on the injury nor subject to the legal principles governing damage awards, we would be creating a new class of damages that are neither compensatory nor punitive. With such an uncertain foundation, any award of this nature poses an intolerable risk of an arbitrary result.

Although a plaintiff in a trespass case, unlike in most cases, need not prove the exact amount of injury in order to secure compensatory damages, *see Boyd,* 67 Md. at 40, 10 A.

315,[9] a nominal damages award should not substitute for or be confused with a compensatory damage award. A court or jury well might give a different award when focusing on the injury (compensatory damages) than when focusing on the violation (nominal damages). We believe it necessary that the two categories of awards remain separate and distinct, even in a trespass case.[10]

The $8,350 damage award in this case simply cannot be justified as nominal. But a case in which a substantial award is inappropriately identified as nominal may be remanded to the trial court on the ground that it might be compensatory rather than nominal. *See, e.g., Flanagan v. Prudhomme,* 138 N.H. 561, 644 A.2d 51, 62 (N.H.1994) ($1,000 "nominal damages" award to owners of property on which the neighbors' garage encroached "remand[ed] to the trial court to determine whether the $1,000 was intended to be compensatory, or, if not, for a determination of proper nominal damages"). We conclude that vacating the existing award, and remanding to the trial court to determine what compensatory damages can

---

**9.** *See also Lanier v. Burnette,* 245 Ga.App. 566, 538 S.E.2d 476, 480–81 (2000) (" 'no precise rule for ascertaining damage can be given' " in some trespass cases, such that jury should be left to decide how much " 'defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have subjected by the [trespass]' ") (citation omitted); *Kaufman v. Adrian's Tree Serv., Inc.,* 800 So.2d 1102, 1105 (La.Ct.App.2001) (when "[n]either party sought to establish a monetary value for the cut trees" taken by trespasser, decision regarding appropriate value was within fact-finder's discretion; award of $500 per tree was appropriate in light of nature of trees and their aesthetic value to the property).

**10.** One court construed an award identified as nominal damages to be a compensatory award, without remanding, when the amount was tied to the plaintiff's loss or the defendant's gain. *See, e.g., Romano,* 233 F.3d at 671 (affirming jury award of $15,000 in "nominal damages" as a compensatory damage award). For the reasons explained above, we think it unwise to do so without remand to the trial court. *Cf. Pierson,* 768 P.2d at 800 (construing award of $2,500 as "designed to provide a measure of compensation" and remanding "for entry of a more appropriate figure"); *Thomas v. Harrah's Vicksburg Corp.,* 734 So.2d 312, 319–20 (Miss.Ct.App.1999) ($3,000 award to tenant reversed and remanded because it was not nominal and plaintiff was entitled to actual commercial damages for trespass).

be supported by the evidence in the record, if any, is the proper remedy in this case. In doing so, we do not opine on whether the record would support an award of compensatory damages.[11]

## V.

### Expert Testimony

At trial, the Smiths presented expert testimony by attorney and licensed title insurance underwriter Randall Rolls, who has given title opinions on properties in Frederick County for more than 27 years. Rolls recounted his special experience in examining and giving title opinions regarding Frederick County properties that were conveyed prior to 1900. Rolls was permitted to testify as "an expert in title examinations, which would include the analysis and plotting of rights-of-way."

Rolls observed that the deed scrivener's detailed metes and bounds description of the right of way demonstrated a "fairly high degree of sophistication," indicating that the deeds should be strictly construed because they were created by a professional. Rolls testified that "it was apparent that there was an attempt to create the joint use among all three properties of the rights-of-way that were created." But he did not agree that the Brown Deed created a right of way over the Smith

---

**11.** Maryland cases addressing compensatory damages include: *B & O R.R. Co. v. Boyd*, 67 Md. 32, 10 A. 315, 317–18 (1887) (Court of Appeals held that rental value of a strip of vacant land on which the defendant trespassed was a proper measure of actual damages); *Abromatis v. Amos*, 127 Md. 394, 96 A. 554, 557 (1916) (citing *Boyd* in holding that, "[t]he defendant having had the use and possession of the property, the plaintiffs were entitled to recover substantial damages"); *Jacob Tome Inst. of Port Deposit v. Crothers*, 87 Md. 569, 40 A. 261, 267 (1898) (citing *Boyd* in holding that plaintiffs were entitled to jury instruction that they could recover fair rental value of land occupied by trespassing defendant); *B & O R. Co. v. Boyd*, 20 A. 902, 903 (Md.1890) (citing earlier decision in same case as holding that trespass plaintiff was "entitled to recover substantial and not merely nominal damages" equivalent to the fair market rental value of the trespassed land given the purpose defendant made of it). *See generally* 1 Dan B. Dobbs, *Law of Remedies* § 5.1, at 711–12 (2d ed. 1993) (collecting cases).

property, so that the Browns could travel east past their property, over the Smith property to Woodland Way Road.

According to Rolls, the Brown Deed merely created "a legal access ... on the *Moser* [now Wolfe] property ... from this corner [where the three properties abut] ... five feet wide, five feet long from this corner, and then it would open up into 20 feet wide and ... the last two bearings calls for going out a 15 foot wide right-of-way to the public road." (Emphasis added.) Rolls explained that, unlike the right of way granted to the Smiths—which crosses property owned by the Browns, the Smiths, and Wolfe—any right of way that the Browns might claim under the deeds extends only for a distance of "five feet going in an easterly direction from the common corner between the old Harshman property and the older Moser property. That right of way was granted only over those particular properties. For that distance." Based on his review of the three deeds, Rolls concluded that the Browns did not have a right of way to travel the segment of the farm lane that lies east of the their parcel, and continues over the Smith property to Woodland Way Road. When the court asked questions to clarify Rolls's expert opinion, he stated simply that the Browns "would not have a right of way over the Smith property."

■■■ The Browns complain that, although Rolls is unquestionably an expert, the trial court erred in permitting Rolls "to testify as to the original grantor's intent." In their view, this testimony constituted a "guess" as to "what the parties' original intent was[,]" which should have been excluded as impermissible conjecture. We do not agree.

First, even if Rolls did offer an opinion on the ultimate issue of the grantor's intent, it was not error or an abuse of discretion to admit it. *See* Md. Rule 5–704(a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact"). Second, the trial court ultimately rested its decision on the language of the deeds themselves, reaching a legal, not a factual, conclusion. *See,*

*e.g., Calvert Joint Venture # 140 v. Snider,* 373 Md. 18, 38, 816 A.2d 854 (2003) ("the construction of a deed is a legal question for the court, and on appeal, it is subject to de novo review"). Although the court may have been aided in reaching this legal conclusion by Mr. Rolls' explanations, it was the deeds themselves that were the basis for both Rolls' opinion and the court's conclusion.

## VI.

### Smiths' Cross–Appeal: Injunction Against Trespass

In their cross-appeal, the Smiths complain that "the trial court should have entered an injunction to prohibit continuing trespasses in the future." Without an injunction, they assert, they "are left with the unenviable task of routinely bringing lawsuit to collect their $5.00 daily payment for [the Browns'] use of their property."

■ We find no error. Such an injunction is not necessary because there was no evidence that the Browns continue to trespass over the Smith property following judicial determination that they do not have a right of way over the farm lane. *See, e.g., Scott v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 605 A.2d 942, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992) (party seeking injunction must show likelihood of future irreparable injury if the injunction is not granted). If the Browns continue to trespass, they do so at their financial risk.

**JUDGMENT AFFIRMED IN PART AND VACATED IN PART, AND REMANDED TO THE CIRCUIT COURT FOR RECONSIDERATION OF DAMAGES.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS/CROSS–APPELLEES AND APPELLEES.**